**COMMONWEALTH of Pennsylvania,
Appellee,**

v.

**Al GRIFFIN A/K/A Francisco
Griffin, Appellant.**

Superior Court of Pennsylvania.

Argued May 7, 2002.

Filed June 24, 2002.

David Zuckerman, Public Defender, Philadelphia, for appellant.

Erica Robertson, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before: HUDOCK, BOWES and CAVANAUGH, JJ.

**1.** 35 P.S. §§ 780–113(16) and (30), respective-

HUDOCK, J.

¶ 1 This is an appeal from the judgment of sentence entered after a jury found Appellant guilty of possessing a controlled substance (cocaine) and possessing a controlled substance with intent to deliver (cocaine).[1] For the reasons explained below, we affirm.

¶ 2 The trial court has explained the facts underlying this appeal in the following apt manner:

On August 6, 1997, Philadelphia Police Officers Merrick and Bolds were patrolling the area of Price and Crittenden in the 14th District of the City of Philadelphia. At approximately 3:45 a.m., the officers noticed two persons inside of a truck which the officers knew to be an abandoned vehicle due to stickers placed on the vehicle by previous police officers designating it as such. The officers parked behind the truck and approached on foot to investigate. Upon reaching the truck, the officers saw a male, later identified as [Appellant], seated on the driver's side, and a female sitting on the passenger side. The officers were standing on opposite sides of the truck, and Officer Merrick then questioned [Appellant] as to the ownership of the truck. When [Appellant] failed to provide identification for himself or the vehicle, Officer Merrick asked him to exit the vehicle. As [Appellant] did so, Officer Merrick, with the aid of his flashlight, noticed a white clear packet on the floor with a white powder substance in it. Officer Bolds then came over to the driver's side and escorted [Appellant] to the rear of the truck while Officer Merrick examined the object further. Based on his experience, Officer Merrick believed the substance to be powder co-

ly.

caine. Bolds then patted [Appellant] and found a total of 32 packets of crack cocaine on his person. Eleven black tinted packets of crack cocaine were found in a cigarette box in [Appellant's] jacket pocket, 18 yellow tinted packets of crack cocaine were discovered in [Appellant's] right sock, and 3 orange tinted packets were located in [Appellant's] right pants pocket. A female officer was summoned to the scene to further search the female suspect. No contraband or drug paraphernalia was found on her person and she was released shortly thereafter.

Trial Court Opinion, 7/12/99, at 1–2 (citations and quotation marks omitted).

¶ 3 Appellant was arrested on drug-related charges and brought to trial. On August 5, 1998, a jury found him guilty of possessing a controlled substance. However, the jury was unable to reach a verdict on the charge of possession with intent to deliver. Consequently, a second trial was conducted before a new jury. On October 16, 1998, the new jury convicted Appellant of possessing a controlled substance with intent to deliver. The trial court sentenced Appellant to serve an aggregate term of imprisonment of between ten and twenty years and to pay a fine of $10,000.00.

¶ 4 Appellant filed a direct appeal to this Court. Although we affirmed the convictions, we vacated the judgment of sentence on the grounds that the trial court did not possess a pre-sentence report at the time of sentencing and did not adequately explain its sentencing rationale on the record. Both Appellant and the Commonwealth filed petitions seeking an appeal before the Pennsylvania Supreme Court. Appellant's petition was denied December 7, 2000. The Supreme Court denied the Commonwealth's request on February 1, 2001.

¶ 5 The certified record shows that, upon remand, the trial judge ordered a pre-sentence report, and that he both possessed and consulted the report at the subsequent sentencing hearing. On May 31, 2001, the trial judge sentenced Appellant to serve an aggregate term of imprisonment of between ten and twenty years and to pay a $10,000.00 fine. This is the same sentence originally imposed by the trial court. Appellant filed a timely motion for reconsideration of sentence, which the trial court denied on June 13, 2001. Appellant's timely notice of appeal followed.

¶ 6 The trial court directed Appellant to file a concise statement and Appellant complied. The trial court thereupon filed a full opinion in the matter. Appellant raises the following issues:

1. Did not the lower court err and abuse its discretion in imposing a maximum term of imprisonment totaling ten to twenty years, far in excess of the applicable guideline range, by:

a) failing to accurately determine and consider, or demonstrate an awareness of, the starting point for the sentencing guidelines before sentencing appellant;

b) failing to state legally sufficient reasons on the record for its substantial deviation from the guidelines, instead relying on improper or irrelevant factors;

c) failing to give individualized consideration to appellant's rehabilitative needs and the mitigating factors presented at appellant's hearing, particularly evidence of appellant's limited mental functioning and possible brain damage; and

d) failing to grant a continuance for [additional] psychological testing and

to allow for the imminent receipt of Department of Corrections records?

2. Did not the trial court lack jurisdiction and violate statutory law, due process, and the right to a jury trial under the state and federal constitutions when it imposed a sentence of twice the statutory maximum pursuant to the recidivist doubling provisions of 35 P.S. 780–115, where the alleged predicate facts, prior convictions, were never submitted to a jury to be proved beyond a reasonable doubt?

Appellant's Brief at 4–5.

¶ 7 Appellant's first argument comprises multiple claims that the trial court should not have imposed a term of imprisonment outside and above the ranges of the sentencing guidelines. In this context, Appellant does not claim that the trial court imposed an illegal sentence. Rather, he advances four contentions that implicate the discretionary aspects of the sentence. A challenge to the discretionary aspects of a sentence requires the claimant to set forth in his brief a separate, concise statement of the reasons relied upon for the allowance of appeal as to that challenge. *Commonwealth v. Eby*, 784 A.2d 204, 205–06 n. 2 (Pa.Super.2001) (citing Pa.R.A.P. 2119(f) and *Commonwealth v. Tuladziecki*, 513 Pa. 508, 522 A.2d 17 (1987)). Appellant has complied with this requirement.

¶ 8 This Court may reach the merits of an appeal challenging the discretionary aspects of a sentence only if it appears that a substantial question exists as to whether the sentence imposed is not appropriate under the Sentencing Code. *Eby*, 784 A.2d at 206.

A substantial question will be found where the defendant advances a colorable argument that the sentence imposed is either inconsistent with a specific provision of the code or is contrary to the fundamental norms which underlie the sentencing process. A claim that the sentencing court imposed an unreasonable sentence by sentencing outside the guideline ranges presents a "substantial question" for our review.

*Id.* (citations omitted). Because Appellant has presented at least a colorable claim that a substantial question exists, we may conduct a substantive review of each of the arguments concerning the discretionary aspects of the sentence imposed upon remand to ascertain whether relief is warranted.

¶ 9 The standard of review in sentencing matters is well settled: imposition of sentence is vested in the discretion of the sentencing court and will not be disturbed by an appellate court absent a manifest abuse of discretion. *Commonwealth v. Smith*, 543 Pa. 566, 570–71, 673 A.2d 893, 895 (1996). An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. *Smith* at 571, 673 A.2d at 895. An appellate court shall vacate a sentence and remand if the sentence is outside the guidelines and is "unreasonable." *Id.* (quoting 42 Pa.C.S. § 9781(c)(3)). If the sentence is "not unreasonable," the appellate court must affirm. *Id.*

¶ 10 When the sentencing court imposes a sentence outside the guidelines, it must provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines. *Eby*, 784 A.2d at 206. The Sentencing Code requires a trial judge who intends to sentence outside the guidelines to demonstrate, on the record, his awareness of the guideline ranges. *Id.* Having done so, the

sentencing court may, in an appropriate case, deviate from the guidelines by fashioning a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community. *Id.* at 207. In doing so, the sentencing judge must state of record the factual basis and specific reasons which compelled him or her to deviate from the guideline ranges. *Id.* at 206. When evaluating a claim of this type, it is necessary to remember that the sentencing guidelines are advisory only. *Id.*

¶ 11 Appellant first complains that the trial judge failed to establish the proper starting point for the sentencing process in that he did not recite the correct sentencing guideline ranges at the sentencing hearing. Furthermore, Appellant avers that the sentencing judge failed to indicate that he had any understanding of the applicable ranges. Appellant is correct in asserting that when deviating from the sentencing guidelines, a trial judge must indicate that he understands the suggested ranges. *Commonwealth v. Rodda,* 723 A.2d 212, 214 (Pa.Super.1999) (*en banc*). However, there is no requirement that a sentencing court must evoke "magic words" in a verbatim recitation of the guidelines ranges to satisfy this requirement. *Id.* at 215. Our law is clear that, when imposing a sentence, the trial court has rendered a proper "contemporaneous statement" under the mandate of the Sentencing Code "so long as the record demonstrates with clarity that the court considered the sentencing guidelines in a rational and systematic way and made a dispassionate decision to depart from them." *Id.* at 216.

¶ 12 Our Supreme Court has ruled that where pre-sentence reports exist, the presumption will stand that the sentencing judge was both aware of and appropriately weighed all relevant information contained therein. *Commonwealth v. Devers,* 519 Pa. 88, 101–02, 546 A.2d 12, 18 (1988). In the present case, the trial judge both possessed and explicitly noted that he had considered the pre-sentence report. N.T., 5/31/01, at 47. The certified record contains a copy of the pre-sentence report, which includes a Guidelines Sentence Form. Appellant's counsel discussed the Guidelines Sentence Form with the trial judge and also discussed the guidelines ranges applicable in this case, as well as the mandatory sentencing structure established by the Legislature. *Id.* at 39–41. As our Supreme Court has explained, "[i]t would be foolish, indeed, to take the position that if a court is in possession of the facts, it will fail to apply them to the case at hand." *Devers,* 519 Pa. at 102, 546 A.2d at 18.

¶ 13 When the record demonstrates that the sentencing court was aware of the guideline ranges and contains no indication that incorrect guideline ranges were applied or that the court misapplied the applicable ranges, we will not reverse merely because the specific ranges were not recited at the sentencing hearing. *Commonwealth v. Canfield,* 432 Pa.Super. 496, 639 A.2d 46, 50–51 (1994). The record in this case fails to substantiate Appellant's claim that the trial court was unaware of the guidelines ranges. Moreover, we agree with the Commonwealth's position that if Appellant wanted the trial judge to recite the applicable ranges in open court, counsel was afforded the opportunity to request him to do so. We do caution the trial court, however, that it is preferable to articulate the applicable ranges, as well as the reasons for deviating from them. Nevertheless, as discussed below, the trial court did provide an extensive explanation for its sentencing ratio-

nale. We find no basis to disturb that determination solely on the grounds that the sentencing transcript lacks a recitation of the guideline ranges that apply in this case.

¶ 14 Appellant next contends that the trial court failed to state legally sufficient reasons for deviating from the guidelines. Appellant argues that the trial court relied on improper and irrelevant factors and failed to consider his rehabilitative needs and his limited mental function and possible brain damage. Appellant also argues that the trial court did not consider the mitigating evidence concerning Appellant's record of good behavior in prison and his attainment of certain scholastic achievements. We find no support for these contentions in the record.

¶ 15 First, we note that in *Commonwealth v. Williams*, 386 Pa.Super. 322, 562 A.2d 1385 (1989)(*en banc*), this Court determined that an allegation that the sentencing court "failed to consider" or "did not adequately consider" various factors is, in effect, a request that this Court substitute its judgment for that of the lower court in fashioning Appellant's sentence. Such an allegation does not raise a substantial question that the sentence imposed was, in fact, inappropriate. *Id.* at 1388. The *Williams* court reasoned that allegations of this type, in the absence of contrary allegations, presume that the sentencing court was provided with adequate information on which to base its sentencing decision, and having such information in its possession, will act in accordance with that information. *Id.* (citing *Devers, supra* ).

¶ 16 Appellant's assertions that the trial court ignored the evidence of his good behavior in prison, as well as his alleged brain damage and his limited mental capacity, are similar to those presented in *Williams*. Appellant does not argue that

the sentencing court received incorrect information; he simply alleges that the lower court inappropriately applied that information when imposing sentence. Since this effectively requests us to substitute our judgment for that of the lower court in this regard, Appellant has failed to present us with a substantial question which will allow us to review the discretionary aspects of his sentence. As such, we must disallow the appeal as to this aspect of Appellant's argument. *See also Commonwealth v. Jones,* 418 Pa.Super. 93, 613 A.2d 587 (1992), *appeal denied,* 535 Pa. 615, 629 A.2d 1377 (1993) (arguments that sentencing court improperly weighed various legitimate factors does not raise a substantial question).

¶ 17 Nevertheless, we note that the record belies Appellant's assertions. The trial court heard testimony from an expert witness at the sentencing hearing concerning Appellant's mental problems and his alleged brain damage. N.T., 5/31/01, at 21–31 (testimony of Dr. Allan Tepper, a licensed psychologist). Furthermore, the trial judge heard counsel's argument concerning both the alleged brain damage and Appellant's mental condition. *Id.* at 38–39. Before imposing sentence, the trial judge specifically stated that he was cognizant of Dr. Tepper's testimony and that he considered the pre-sentence report. *Id.* at 47. The pre-sentence report documents Appellant's childhood exposure to lead and also notes his Tylenol overdose at age three. The trial judge explicitly noted that he found Appellant's good behavior and his achievements in prison to be legitimate considerations. *Id.* at 34. Furthermore, he stated that he found Appellant's accomplishments to be "commendable." *Id.* For these reasons, we find no indication that the sentencing judge was unaware of, or that he ignored,

any of the mitigating evidence to which Appellant now draws our attention.

¶ 18 Appellant further contends that the sentence imposed in this case depended on legally improper factors and that the trial court's explanation of its rationale comprises an inadequate justification for the severity of the sentence. Appellant argues that the sentencing court was not permitted to consider Appellant's criminal history as a matter separate from his prior record score. Appellant is incorrect. When imposing sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. *Commonwealth v. Burns,* 765 A.2d 1144, 1150–51 (Pa.Super.2000), *appeal denied,* 566 Pa. 657, 782 A.2d 542 (2001). In particular, the court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation. *Id.* at 1151. Because our law requires a sentencing court to consider the prior criminal record to ascertain a defendant's amenability to rehabilitation, we cannot fault the trial court for doing so in this case.

¶ 19 We also reject Appellant's claim that the sentencing court inadequately justified its sentence. The trial judge provided an extensive explanation of his rationale at the sentencing hearing:

All right. The Court has certainly listened to Dr. Tepper [the psychologist], argument of counsel, [Appellant], the District Attorney. I've also considered the presentence report. I've also considered the fact that [Appellant] has conducted himself recently in some of these programs [at the prison] in a manner which is certainly admirable and certainly he's completed these programs.

I also note that the area that this occurred in is Germantown, Price and Crittendon, which is certainly a low income area and of course drug dealers have a great deal of problems, cause a great deal of problems in neighborhoods where income is not such that people can move. And I think that's one of the reasons why I'm going to go outside the guidelines.

I also in looking at the presentence report, I see that [Appellant] has again indicated his absolute innocence not for this crime alone but for the fifteen or sixteen other crimes. He claims total innocence. He's demonstrated absolutely no remorse. He has an extensive record which goes well beyond anything that could possibly have been anticipated by the people who wrote the guidelines and any other areas.

I also note in looking at the presentence report that his, he's likely to be a recidivist and he also has had many other treatments and activities at various other places, none of which seems to have done any good. And it's for all of those reasons that I am going to impose the sentence and those are the reasons why I'm going outside the guidelines.

Although I've heard from [Appellant's] family and I understand that they do care for him a great deal, I think it's unfortunate, though, that we can't allow people like [Appellant], even though they may be nice to their family and may be loved by their family, we can't allow them to victimize the rest of society.

I think to let [Appellant] out before the possible time on this would be a great disservice to the entire community, not only Germantown but any area in Philadelphia or anywhere else he might go.

N.T., 5/31/01, at 47–49.

¶ 20 Contrary to Appellant's assertions, the trial court did not err in referring to

the fact that the crimes at issue were committed in Germantown. The sentencing guidelines specifically direct a sentencing judge to address the gravity of an offense as it relates to the crime's impact on the community. 42 Pa.C.S.A. § 9721(b). *See Commonwealth v. Begley,* 566 Pa. 239, 301, 780 A.2d 605, 642–43 (2001) (holding that the trial court must impose a sentence consistent with the crime's impact on the community). Appellant may not rely on *Commonwealth v. Stevens,* 349 Pa.Super. 310, 503 A.2d 14 (1986), in contravention of the provisions of section 9721. This Court's decision in *Stevens* was handed down prior to the adoption of the sentencing guidelines in 1988. Our Supreme Court's more recent ruling in *Begley* must govern the question of the manner in which a trial court should address the impact of a crime on the relevant community. In light of the trial court's extensive explanation, we find that the requirement of providing an explanation on the record for the sentence imposed has been satisfied under the standard articulated in *Devers,* 519 Pa. at 102, 546 A.2d at 18.

¶ 21 Appellant next argues that the sentencing court has displayed a bias against all drug dealers and, for this reason, he is entitled to a new sentencing hearing before a different judge. We cannot grant such relief. The issue of the trial court's alleged bias was never raised before the trial judge himself, either at the sentencing hearing or in the motion for post-sentence relief. Furthermore, no motion for recusal was filed of record, and Appellant does not argue that he presented an oral motion for recusal. Issues not raised in the trial court are waived and may not be raised in the first instance on appeal. Pa.R.A.P. 302(a).

¶ 22 Appellant also contends that the trial court relied on facts not in evidence when imposing sentence. To support this claim, Appellant has taken several of the trial judge's questions out of context. For example, he claims that the trial court asserted that he sold drugs to children. This is not what occurred. The trial judge asked Appellant's sister what she thought of people who sell drugs to children. N.T., 5/31/01, at 12. The trial court clearly was trying to understand how the witness could reconcile her purported belief that drug dealing was wrong with her avowed desire to have her brother come home to live with her and her children. Furthermore, the trial court explicitly noted that there is no indication of record that Appellant ever sold drugs to children. *Id.* at 13.

¶ 23 Later in the hearing, Appellant's paramour urged the judge to consider the fact that "[m]aybe [Appellant] needs to be institutionalized somewhere where he can receive some type of help. I think he needs help." *Id.* at 18. The trial judge responded that "[m]aybe the public needs some help by getting rid of him." *Id.* Contrary to the implications of Appellant's argument, this was not a call for Appellant's execution. The trial judge immediately clarified his comment by stating that he meant getting Appellant "off the street." *Id.*

¶ 24 Appellant's paramour tried to convince the trial judge that selling drugs wasn't such a bad thing in comparison to murder. N.T., 5/31/01, at 19. The trial court responded with a query as to whether any of Appellant's customers ever died from the drugs he sold them. *Id.* The trial judge never stated that Appellant killed anybody with drugs. Rather, the trial judge indicated his displeasure that Appellant's paramour wanted him to deprecate the seriousness of Appellant possessing thirty-three separately packaged units of

cocaine at the time of his arrest. *Id.* at 19–20. This is not the same thing as fabricating non-existent evidence, which Appellant would have us believe occurred in this case.

¶ 25 Appellant also argues that it was improper for the trial court to consider Appellant's purported lack of remorse based on information contained in the pre-sentence report to the effect that he maintains his innocence as to all charges on which he was convicted previously. Appellant's Brief at 27–28. Appellant contends that it was improper to rely upon information derived from a telephone interview conducted by the person who prepared the pre-sentence report. Appellant has cited no case law for the proposition that telephone interviews are inherently unreliable and that they may not be employed when preparing a pre-sentence report.

¶ 26 The trial court raised the question of Appellant's lack of remorse and the fact that he denied committing any of the offenses chronicled in the pre-sentence report. N.T., 5/31/01, at 37. Counsel did not contradict the trial court's assertion; counsel merely tried to explain away Appellant's attitude as "denial." *Id.* If the pre-sentence report contained erroneous information, it was incumbent upon counsel to call this to the trial court's attention rather than attempting to explain it away. Furthermore, we note that the certified record contains no indication that Appellant presented a written motion to correct the pre-sentence report after sentence was imposed. Under these circumstances, we see no basis on which we could fault the trial court's decision to rely on the contents of the pre-sentence report.

¶ 27 To support his claim that the trial judge is prejudiced against drug dealers, Appellant has filed a substantial Appendix to his Reproduced Record. None of this material is contained within the certified record, and there is no indication of record that the documentation was ever submitted to the trial court. As such, we may not consider it. *See Commonwealth v. Bracalielly*, 540 Pa. 460, 475, 658 A.2d 755, 763 (1995) (appellate courts may only consider facts which have been duly certified in the record on appeal; an item does not become part of the certified record by simply copying it as part of the reproduced record).

¶ 28 Appellant next contends that the trial court committed an abuse of discretion in failing to grant a continuance so that further psychological testing could be performed on his behalf. The grant or denial of a motion for a continuance is within the sound discretion of the trial court and will be reversed only upon a showing of an abuse of that discretion. *Commonwealth v. McAleer*, 561 Pa. 129, 135, 748 A.2d 670, 673 (2000). As already noted, an abuse of discretion is not merely an error of judgment. *Id.* Rather, discretion is abused when the law is over-ridden or misapplied, or the result of partiality, prejudice, bias, or ill-will as shown by the evidence or the record. *Id.* "The grant of a continuance is discretionary and a refusal to grant is reversible error only if prejudice or a palpable and manifest abuse of discretion is demonstrated." *Commonwealth v. Chamberlain*, 557 Pa. 34, 43, 731 A.2d 593, 597 (1999).

¶ 29 The record shows that on May 30, 2001, counsel requested the trial court to grant a continuance on the grounds that she had not had an opportunity to review the pre-sentence report. N.T., 5/30/01, at 3. The trial court noted that this was not unusual because defense counsel normally receives the pre-sentence report only a day or two before sentencing. *Id.* Counsel agreed. *Id.* The trial judge indicated that sentencing would proceed the next day and

that if it was warranted, he would consider granting a continuance at that time. *Id.* at 4.

¶ 30 On the morning of May 31, 2001, a different member of the Defenders Association appeared on Appellant's behalf and requested a continuance on the grounds that there had been no opportunity for Appellant to meet with a social worker and a psychologist. N.T., 5/31/02, at 3–4. When the trial court asked why there had been no opportunity, counsel indicated that he had not anticipated that Appellant's appeal would be successful, and he thought there would be no need for the interviews to be conducted. *Id.* at 4. However, counsel also indicated that he had a social worker and a psychologist ready to meet with Appellant. *Id.* The trial court then granted a continuance until 3:30 p.m. to facilitate the interviews. *Id.* at 5. Counsel requested an additional half hour, and the time was granted. *Id.* at 6.

¶ 31 Appellant's sentencing hearing reconvened later that same day. The psychologist testified at length concerning his interview with Appellant and his review of Appellant's records. Defense counsel did not call the social worker to testify, nor did he request a continuance so that she might testify at another time. Appellant does not now contend that he was prejudiced by the absence of the social worker's testimony. Rather, he argues that the psychologist should have been permitted to perform additional tests.

¶ 32 Dr. Allan Tepper testified that he needed to perform between two and five hours of additional tests to ascertain whether Appellant suffered from organic brain damage. N.T., 5/31/01, at 29. The trial court questioned Dr. Tepper as to why he had not performed any of those tests during the more than two years Appellant was in custody. *Id.* at 29–30. Dr. Tepper replied that he was never asked to do so, and that he was only retained by Appellant late on the previous day. *Id.* at 30. Dr. Tepper also testified that no cure exists for brain damage and that treatment consists of trying to "build" on the person's "strengths." *Id.* at 26. Dr. Tepper specifically stated that his evaluation of the record caused him to conclude that the likelihood of recidivism in Appellant's case was "very high." *Id.* at 28.

¶ 33 Appellant has not explained how the tests, if Dr. Tepper had performed them, would have compelled the trial court to employ a different sentencing rationale than the one imposed in this case. Dr. Tepper stated unequivocally that there is no cure for brain damage and that Appellant is highly likely to be a recidivist. Appellant speaks in broad generalities, arguing that confirming the diagnosis of organic brain damage would have permitted the trial court to craft a sentence more closely tailored to his needs. However, Appellant has not explained how confirming the diagnosis of probable brain damage already set forth in the pre-sentence report would have caused the trial court to impose a lesser sentence for drug-related offenses.

¶ 34 Dr. Tepper stated that organic brain damage causes behavioral problems stemming from lack of control over impulses and an inability to "get along" with other people. N.T., 5/31/01, at 25. He also stated that brain damage can create scholastic difficulties. *Id.* While these facts might mitigate a crime of passion, none of this information indicates that Appellant's alleged brain damage caused him to possess contraband substances with the intent to deliver them. Moreover, Appellant concedes that during his incarceration at the State Correctional Institution at Greene, he was participating successfully in various programs that related to his medical and mental health. Appellant's

Brief at 39. This admission in itself indicates that his mental health needs were being addressed. In light of all the circumstances presented by this case, we find no indication that the trial court committed a palpable and manifest abuse of discretion in denying a second continuance in this case so that additional psychological tests could be performed.

¶ 35 Appellant also argues that he was entitled to a continuance so that certain prison records could be obtained and presented for the trial court's review. Appellant did not explain to the trial court the nature of the records or what they demonstrated. Appellant now argues that the records were important because they documented Appellant's good behavior in prison and the fact that Appellant was participating successfully in various programs. However, the trial court was apprised of these facts at the sentencing hearing via testimony and argument of counsel. Furthermore, counsel did present certain documents substantiating Appellant's good behavior and progress while in prison. N.T., 5/31/01, at 31. The trial court acknowledged his receipt of this information and stated that he found Appellant's efforts at adjustment to be "commendable." *Id.* at 34. Indeed, the trial judge stated, "I think these are evidence of a good start on his behalf." *Id.* Appellant has not explained what specific information the trial court lacked when imposing sentence. Thus, Appellant has not demonstrated prejudice or that the trial judge committed a palpable and manifest abuse of discretion in declining to postpone sentencing until he received additional and cumulative reports concerning matter he explicitly addressed at the hearing.

¶ 36 Appellant next argues that the sentence imposed by the trial court constituted reversible error. Appellant contends that he was entitled to have a jury determine beyond a reasonable doubt whether he committed the prior offenses considered by the trial court when it imposed a discretionary sentencing enhancement provision that doubled the term of imprisonment. The Commonwealth asserts that this issue has not been preserved for our review. However, because the claim was identified properly in both Appellant's motion for reconsideration of sentence and in his concise statement, we do not find waiver. *See Commonwealth v. Williams,* 787 A.2d 1085, 1088 (Pa.Super.2001) (holding that a challenge to the discretionary aspects of sentence is waived if the sentencing judge has not been afforded an opportunity to correct the sentence). Unlike the claimant in *Williams,* Appellant filed a post-sentence motion raising the issue he now argues on appeal. The sentencing court had the opportunity to address the question, and the claim is not waived on this basis.

¶ 37 Essentially, Appellant asserts that any time a sentencing enhancement provision is invoked, a defendant is entitled to have a jury determine whether the evidence proves beyond a reasonable doubt that the factors addressed in the enhancement statute apply. Appellant further contends that a jury trial is required because, whenever the possibility exists that the trial court might apply a sentencing enhancement, the fact of a previous conviction becomes an element of subsequent criminal charges. The trial court determined that Appellant has at least one prior conviction for possession of a controlled substance with the intent to deliver. Thus, Appellant urges us to hold that the fact of his alleged prior conviction was a substantive element in the guilty verdict underlying this appeal because the possibility that the trial court could apply a sentencing enhancement converted the instant charge from possession with intent to

deliver to possession with intent to deliver as a subsequent offense.

¶ 38 Pennsylvania law authorizes a judge to impose a maximum sentence of ten years upon a conviction for possession of cocaine with intent to deliver. 35 P.S. § 780–113(f)(1.1). However, section 780–115 of Title 35 permits, but does not require, the sentencing court to impose a doubled sentence upon conviction of a second or subsequent offense:

> Any person convicted of a second or subsequent offense under clause (30) of subsection (a) of section 13 of this act [pertaining to possession of contraband substances with intent to deliver] or of a similar offense under any statute of the United States or of any state, may be imprisoned for a term up to twice the term otherwise authorized, fined an amount up to twice that otherwise authorized or both.

35 P.S. § 780–115(a). Section 115(a) is phrased permissively in that it authorizes, without requiring, the trial court to double the ten-year term that otherwise would constitute the maximum allowable sentence for possession with intent to deliver. *Id.* Nevertheless, whether the trial court elects to apply the recidivist provision or not, the fact that the defendant is eligible for an enhanced sentence doubles the maximum legal sentence that otherwise would have applied if the defendant were convicted of possession with intent to delivery as a first offense. *Commonwealth v. Diaz,* 442 Pa.Super. 238, 659 A.2d 563, 572–73 (1995), *appeal denied,* 542 Pa. 658, 668 A.2d 1123 (1995).

¶ 39 Although section 780–115 permits the trial court to double a sentence, nothing in the statute creates a new crime called "possession of a controlled substance with intent to deliver as a second or subsequent offense," nor does it add a new element to the statutory definition of the crime of possession with intent to deliver. *See* 35 P.S. § 780–115(a), *supra.* Our statutory law defines only one offense pertaining to the possession of a controlled substance with the intent to deliver that substance:

> Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780–113(a)(30). When read in *pari materia,* clearly the language of sections 780–113(a)(30) and 780–115(a) creates no new possessory offense requiring a previous conviction as a substantive element.

¶ 40 No matter how often a person is charged with possession with intent to deliver, to sustain a conviction the Commonwealth must prove beyond a reasonable doubt only that, on a specific occasion, the defendant possessed a controlled substance he was not licensed to possess, and that he did so under circumstances demonstrating an intent to deliver that substance. *Commonwealth v. Aguado,* 760 A.2d 1181, 1185 (Pa.Super.2000) (*en banc*). Intent may be inferred from an examination of the facts and circumstances surrounding the case. *Id.* Factors which may be relevant in establishing that drugs were possessed with the intent to deliver include the particular method of packaging, the form of the drug, and the behavior of the defendant. *Id.* However, the existence of a prior conviction of possession with intent to deliver is not an element that must be proven upon a subsequent charge of possession with intent to deliver. *Id.* at 1186–87.

¶ 41 No matter how often a person is charged with possession with intent to deliver, the elements remain unchanged. *Id.* Moreover, it is reversible error for the trial court to admit evidence of prior convictions of possession with intent to deliver except under narrowly defined circumstances:

> Evidence of a prior crime is admissible if it tends to prove (1) motive, (2) intent, (3) absence of mistake or accident, (4) a common scheme or plan embracing the commission of crimes so related to each other that proof of one tends to establish the other, or (5) the identity of the person charged with the commission of the crime on trial: "in other words, where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other." *Commonwealth v. Morris,* 493 Pa. 164, 175, 425 A.2d 715, 720 (1981).

*Aguado,* 760 A.2d at 1186.

¶ 42 Neither Appellant nor the Commonwealth contends that Appellant's prior convictions for drug-related offenses were admissible at trial under any of the above exceptions. Rather, Appellant argues that because his sentence potentially could be enhanced under section 115, his prior convictions somehow were converted into an element of the crime of possession with intent to deliver. We rejected the theory that a recidivist sentencing provision alters the elements of the crime charged by our decision in *Commonwealth v. Coleman,* 289 Pa.Super. 221, 433 A.2d 36 (1981).

¶ 43 Coleman was convicted of retail theft. It was his third offense, which subjected him to an enhanced sentence not applicable to a first offense. The Commonwealth introduced evidence of the prior convictions, and Coleman objected. The trial court granted a new trial because the evidence Coleman had been convicted of prior crimes unrelated to the charges before the jury should not have been entered in evidence. We affirmed, concluding that Coleman was impermissibly prejudiced once the jury learned he was a repeat offender. In so holding, we noted that "had the legislature intended to make the grading of the offense one of its substantive or operative elements, it would not have divided the definition of the offense and the grading of the offense into distinct and separately labeled subsections." *Id.,* 433 A.2d at 39. We note that the elements of possession with intent to deliver are set forth in a separate subsection of the Drug Act from the sentencing enhancement provision at issue in the present case.

¶ 44 In *Commonwealth v. Lark,* 350 Pa.Super. 558, 504 A.2d 1291 (1986), the defendant was convicted of third-degree murder. Because the defendant previously was convicted of homicide, he was subject to an enhanced sentence. We held that the fact of a previous homicide conviction does not become an element of murder merely because a sentencing enhancement provision will apply based on that previous conviction. *Id.* at 1297–98. Our decisions in *Coleman* and *Lark* indicate that a prior conviction for a particular offense does not create a new crime simply because a sentencing enhancement may be applied upon a subsequent conviction for that offense.

¶ 45 Appellant cites two ancient cases for the proposition that Pennsylvania has long recognized a right to a jury trial to determine whether a defendant is a recidivist. Appellant thus contends that he was entitled to have a jury determine whether he was guilty of prior drug-related offenses because the ancient right purportedly modified the substantive elements of the modern crime of "possession with intent to deliver" as defined by the Crimes

Code set forth in Title 18 of our Consolidated Statutes. The Crimes Code was passed in 1972 and became effective on June 6, 1973. 18 Pa.C.S.A. § 101. It abolished common law crimes and specifically provides that no conduct constitutes a crime unless statutorily defined. 18 Pa. C.S.A. § 107(b). We therefore question the applicability to statutorily defined crimes of decisions construing common law crimes, which were filed well before the enactment of the Crimes Code. In any event, the cases cited by Appellant do not compel the result he urges us to reach.

¶ 46 Contrary to Appellant's assertions, *Smith v. Commonwealth*, 14 Serg. & Rawle 69 (1826), does not stand for the proposition that a jury must decide whether a defendant is a recidivist. In *Smith*, our Supreme Court held that a defendant whose prior convictions were not alleged in the bill of indictment, and which did not appear of record, could not be punished as a repeat offender. *Id.* at 70. *Smith* does not state that the defendant was entitled to have a jury probe the question of his repeat offender status. Rather, the decision chastises the Commonwealth for filing a faulty indictment and for failing to produce a proper record.

¶ 47 Appellant also cites *Rauch v. Commonwealth*, 78 Pa. 490 (1876), in support of his purported right to a jury trial to prove the fact of his prior drug-related convictions. In *Rauch*, the defendants were charged with unlawfully selling liquor. The bill of indictment did not allege that this was a second offense for the defendants, nor did the Commonwealth establish the fact of any prior convictions through the introduction of evidence to that effect. Nevertheless, the trial judge *sua sponte* raised the existence of prior convictions because he knew of them from a source other than the indictment or the trial. Our Supreme Court held that it was improper for a court to sentence pursuant to facts dehors the record in contradiction to the indictment. *Rauch*, 78 Pa. at 494–95. In the present case, the trial court did not rely on facts not of record when sentencing Appellant.

¶ 48 The certified record contains a pre-sentence report. The record clearly indicates that the trial judge both possessed and consulted this report when he imposed Appellant's sentence. N.T., 5/31/01, at 47. The pre-sentence report filed in the present case indicates that the conviction for possession with intent to deliver underlying this appeal was not Appellant's first drug-related conviction. Indeed, the pre-sentence report discloses that Appellant has been convicted several times on drug-related charges, as both a juvenile and as an adult. Specifically, the pre-sentence report states that in November of 1991, when Appellant was age 21, he pled guilty to possession with intent to deliver a controlled substance. Pre–Sentence Report, 5/8/01, at 5 ¶ 5. Thus, the pre-sentence report establishes that Appellant was previously convicted, on at least one occasion prior to the conviction underlying this appeal, of an adult offense cognizable under section 115(a).

¶ 49 Appellant claims he was innocent of all the crimes documented as prior convictions in the pre-sentence report. However, he does not contend that the information set forth in the pre-sentence report is inaccurate in stating that the convictions actually occurred. Rather, he claims he was entitled to have a jury confirm the existence of the prior convictions. Appellant cites *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), in support of his position. However, *Apprendi* does not warrant the relief Appellant seeks.

¶ 50 In *Apprendi*, the defendant pled guilty to two counts of possessing a firearm for unlawful purposes and one count of possessing an antipersonnel bomb. *See*

*Commonwealth v. Lowery,* 784 A.2d 795, 799 (Pa.Super.2001) (discussing the parameters of the *Apprendi* decision). A New Jersey trial judge applied a preponderance of the evidence standard, found that the crimes were racially motivated, and applied the state's sentencing enhancement provision for hate crimes. *Id.* The United States Supreme Court reversed, holding that other than the existence of a prior conviction, any fact that enhances the penalty for a crime beyond the statutory maximum must be submitted to a jury. *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348.

> Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. With that exception, we endorse the statement of the rule … [that] [i]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt.

*Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348 (quotations omitted). Appellant disputes the fact of his prior convictions on the grounds that a jury never found him guilty. *Apprendi* does not mandate a jury inquiry concerning previous convictions. Rather, the Supreme Court explicitly exempted the existence of prior convictions from the mandate of jury consideration when sentencing enhancement is an issue.

█ ¶ 51 When considering the propriety of a sentencing enhancement in the wake of *Apprendi,* this Court determined that it is appropriate to employ a multipart analysis. *Lowery,* 784 A.2d at 799. First, we must ascertain whether the enhanced sentence exceeded the statutory maximum for the crime for which the defendant was convicted. *Id.* If it did, the next question is whether the enhanced sentence was based upon the fact of a prior conviction. *Id.* If it was, then the sentence is constitutional. *Id.* If it was not, then the sentence is unconstitutional. *Id.*

¶ 52 As discussed above, in the present case, the enhanced sentence was double the sentence that otherwise would have applied to the crime of possession with intent to deliver. The enhancement factor was predicated solely upon the existence of one or more prior convictions. Thus, under this Court's interpretation of *Apprendi,* Appellant's sentence is constitutionally firm. We have considered Appellant's contentions carefully. Nevertheless, we find no basis in either statutory or case law to support the conclusion that the fact of a prior conviction for possession with intent to deliver somehow becomes an element of subsequent charges with that offense. Furthermore, nothing in the *Apprendi* decision alters this conclusion. Appellant was not entitled to have a jury determine whether he was a recidivist, and we can grant no relief on this claim.

¶ 53 Judgment of sentence affirmed.