J-S34014-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
:
:
v. :
:
:
:
BRITTANY L. YOUNG : No. 176 WDA 2023

Appeal from the Judgment of Sentence Entered February 2, 2023
In the Court of Common Pleas of Butler County Criminal Division at
No(s): CP-10-CR-0001045-2021

BEFORE: LAZARUS, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY LAZARUS, J.: **FILED: December 8, 2023**

The Commonwealth of Pennsylvania appeals from the judgment of

sentence, entered in the Court of Common Pleas of Butler County, following

Brittany L. Young's convictions of one count each of aggravated assault –

attempt to cause serious bodily injury,[1] aggravated assault – attempt to cause

bodily injury with deadly weapon,[2] recklessly endangering another person,[3]

---

[1] 18 Pa.C.S.A. § 2702(a)(1).

[2] *Id.* at § 2702 (a)(4).

[3] *Id.* at § 2705.

disorderly conduct,[4] simple assault – attempt to cause bodily injury,[5] and simple assault – physical menace.[6]  After careful review, we affirm.

On July 18, 2021, Robert Avondo and Nancy Defalle had been drinking, kayaking, and fishing from the morning until the early afternoon.  **See** N.T. Jury Trial, 11/8/22, at 27-28, 31, 54-56, 74.  As they returned home, they observed an elderly neighbor[7] failing to clean up after his dog defecated on another neighbor's lawn.  **Id.** at 33, 56.  Defalle went inside to change, and Avondo confronted the elderly neighbor.  **Id.** at 33-34, 56-57.  Avondo used "very strong profanity" and "a lot of the [']F[-]word['] and what the F[.]"  **Id.** at 56-57.  Avondo continued berating the elderly neighbor for a short time.[8]

During the above-described argument, Avondo also began yelling at Christina Mazza, his next-door neighbor.  Young,[9] who was in her vehicle

---

[4] **Id.** at § 5503(a)(4).

[5] **Id.** at § 2701(a)(1).

[6] **Id.** at § 2701(a)(3).

[7] The elderly neighbor passed away prior to trial in this case.

[8] We note that Avondo had numerous arguments over the years with several neighbors regarding the neighbors' collective failure to clean up after their pets.  By each neighbor's account, and Avondo's own account, Avondo was often aggressive and yelling profanities when people did not clean up after their pets.  **See id.** at 30, 45-46, 53, 73, 157-58, 168-70.

[9] Young was in the neighborhood visiting Mazza.  **Id.** at 158-59.  Young's eldest child had spent the night at Mazza's house, and Young had brought her two younger children to pick up her eldest child.  **Id.**; **see also id.** at 181.  At
*(Footnote Continued Next Page)*

parked on the street and saw the arguments occur, asked Avondo what was going on and he told Young it was none of her business. *See id.* at 58-60. Avondo continued his belligerent behavior and began screaming and yelling at Young as well. *Id.* at 58-60, 160-61, 183-84. During this argument, Mazza went inside to comfort Young's children. *Id.* 161-62. Avondo and Young continued to argue, and Avondo called Young a "bitch" and, in turn, she called him an "M F-er." *Id.* at 58-59. At some point, Young and Mazza informed Avondo that there were children in Mazza's home and Avondo said he "didn't give a fuck about [the] kids." *Id.* at 112, 170. As the argument continued, Young reached into her vehicle and pulled out her licensed firearm[10] and pointed it towards the ground. *Id.* at 58-59, 184-86. Avondo asked if the gun was supposed to scare him, and called Young the "C-word." *Id.* at 60, 186. Young raised the firearm and aimed it at Avondo. *Id.* at 60. Avondo continued to use profanity and taunted Young telling her "she didn't even know how to use it." *Id.* Ultimately, Avondo turned away and began to walk back towards the house he shares with Defalle. *Id.* at 60-62. As Avondo was walking back towards the house, Young fired the weapon into the ground, between the two. *Id.* at 63. Avondo was approximately 12 feet away. *Id.*

_____

the time of the argument, Young was in her vehicle making a phone call. *Id.* at 159-60, 182.

[10] At the time, Young was licensed to carry a firearm. *See id.* at 179; *see also* N.T. Jury Trial, 11/9/23, at 4 (Young's firearm permit admitted as Defense Exhibit 2). The firearm was a Ruger Security 9, a 9mm semi-automatic handgun with a 15-round magazine. *Id.* at 100.

Avondo called 9-1-1 and Defalle, who had heard the gunshot from inside the home, ran across the street to the police station.[11]  *Id.* at 35, 64.  Mazza also heard the shot and ran outside and began video recording the remainder of the interaction, which was presented at trial.  *See id.* at 163-64 (Mazza testifying she video recorded incident after gunshot); *id.* at 88 (admitting Mazza's video as Commonwealth Exhibit 8).  Police arrived on the scene and detained Young.  Young was compliant with the police officers' commands. Young was taken to the police station, where she waived her *Miranda*[12] rights and agreed to give a statement.[13]  Young was ultimately charged, *inter alia*, with the above-mentioned offenses.

On November 8-9, 2022, Young proceeded to a jury trial, after which she was convicted of the above-mentioned offenses.  The trial court deferred sentencing and ordered the preparation of a pre-sentence investigation report (PSI).  On December 6, 2022, the Commonwealth filed a sentencing memorandum, in which it requested that the trial court apply the deadly

_____

[11] The police station was located across the street from the altercation.  *Id.* at 80.

[12] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[13] In Young's statement, she stated that she knew she had made a mistake in firing the weapon, but that she was concerned due to Avondo's behavior that her kids may be in danger.  *See id.* at 112-14 (Young's statement being read into record).

weapon enhancement.[14]  On February 1, 2023, Young filed a response, in which she included 14 letters from community members detailing the impact a significant jail sentence would have on Young, her children, and the community at large.

On February 2, 2022, the trial court conducted a sentencing hearing. The trial court expressly stated that it was following standard range of the guidelines for aggravated assault (22 to 36 months), which did not include the deadly weapon enhancement.  The trial court sentenced Young to seven days to 12 months in county jail, followed by 24 months' probation, for each of Young's convictions of aggravated assault, to run concurrently.  The trial court further ordered that Young complete 150 hours of community service, and pay fines and costs of prosecution.  The trial court imposed no further penalty at Young's remaining convictions.  Finally, the trial court ordered that Young be immediately paroled upon reaching her minimum jail sentence of seven days, and that the remainder of her county jail sentence be served on house arrest.[15]

_____

[14] The deadly weapon enhancement "used matrix" adds an additional 18 months to the lower and upper limits of the standard range for sentencing guidelines.  *See* 204 Pa. Code § 303.10(a)(6)(iii) (deadly weapon enhancement adds 18 months to lower and upper limits of standard range for OGS 9 -14).

[15] In the aggregate, Young was sentenced to serve seven days in county jail, the remainder of 12 months on house arrest, followed by 24 months' probation, to complete 150 hours' community service, and pay fines and costs.

The Commonwealth filed a timely post-sentence motion challenging the trial court's failure to apply the deadly weapon enhancement. In particular, the Commonwealth argued that Young's use of a firearm during the incident necessarily added 18 months to the guideline range, making the guideline range 40 to 54 months. Young filed a response, and, on February 10, 2023, the trial court conducted a hearing. At the hearing, the trial court agreed with the Commonwealth that it had erred in failing to properly state the enhanced guidelines at Young's sentencing hearing. *See* N.T. Post-Sentence Motion Hearing, 2/10/23, at 7-9. Additionally, the trial court noted that even with the enhancement, it was deviating from the guidelines and keeping Young's sentence as stated above. *Id.* On the same day, the trial court issued an order stating the same. *See* Order, 2/10/23, at 1.

The Commonwealth filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The Commonwealth now raises the following claims for our review:

[1.] Whether the trial court abused its discretion by unreasonably deviating from the applicable sentencing guidelines when the court imposed an excessively lenient sentence of seven days of incarceration for shooting at the victim with a firearm.

[2.] Whether the trial court abused its discretion or erred as a matter of law by considering improper mitigating circumstances that do not justify such a vast departure from the sentencing guidelines.

[3.] Whether the trial court abused its discretion or erred as a matter of law in not considering the deadly weapon enhancement mitigation deviation provisions of 204 Pa. Code § 303.13(b)(6).

Commonwealth's Brief, at 4.

The Commonwealth's claims[16] challenge the discretionary aspects of Young's sentence, from which there is no automatic right to appeal. *See Commonwealth v. Mastromarino*, 2 A.3d 581, 585 (Pa. Super. 2010). Before addressing such a challenge, we must first determine:

> (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, [*see*] Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010) (quotation marks and some citations omitted).

Here, the Commonwealth filed a timely notice of appeal, post-sentence motion, and properly included a Rule 2119(f) statement in its brief. Accordingly, we must determine whether the Commonwealth's claims raise a substantial question. *See Moury*, *supra*.

The determination of what constitutes a substantial question is evaluated on a case-by-case basis. *See Commonwealth v. McCain*, 176 A.3d 236, 240 (Pa. Super. 2017). A substantial question exists only when the appellant advances a colorable argument that the sentencing court's actions were either inconsistent with a specific provision of the Sentencing Code or

---

[16] All of the Commonwealth's claims pertain to whether the trial court issued an excessively lenient sentence. Accordingly, we determine these claims to be interrelated, and address them together.

contrary to the fundamental norms which underlie the sentencing process. **_See id._**

In the Commonwealth's Rule 2119(f) statement, it asserts that the trial court abused its discretion in failing to apply and consider the deadly weapon enhancement to Young's aggravated assault convictions. It is well settled that the Commonwealth presents a substantial question when it contends that the sentence imposed was excessively lenient and unreasonably deviated from the applicable sentencing guideline range. **_See Commonwealth v. Kenner_**, 784 A.2d 808, 811 (Pa. Super. 2001) (citing **_Commonwealth v. Sims_**, 728 A.2d 357 (Pa. Super. 1999)); **_see also Commonwealth v. Kneller_**, 999 A.2d 608, 613 (Pa. Super. 2010) (en banc) ("[A] challenge to the application of the deadly weapon enhancement implicates the discretionary aspects of sentencing."). Additionally, the Commonwealth contends that the trial court abused its discretion by significantly deviating from the guidelines, and by considering improper mitigating factors. Together, these two claims raise a substantial question. **_See McCain_**, 176 A.3d at 241 (concluding Commonwealth had raised substantial question where it alleged trial court's sentence failed to protect public and was "unreasonable departure from the mitigated range of the sentencing guidelines"); **_see also Commonwealth v. Derrickson_**, 242 A.3d 667, 680 (Pa. Super. 2020) (finding substantial question where appellant asserted trial court considered improper sentencing factors and deviated from sentencing guidelines). Accordingly, we review the merits of the Commonwealth's claims.

We adhere to the following standard of review:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias, or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Robinson*, 931 A.2d 15, 26 (Pa. Super. 2007) (citation omitted).

A sentencing judge has broad discretion in determining a reasonable penalty, and appellate courts afford the sentencing court great deference, as it is the sentencing court that is in the best position to "view the defendant's character, displays of remorse, defiance[,] or indifference, and the overall effect and nature of the crime." *Commonwealth v. Walls*, 926 A.2d 957, 961 (Pa. 2007) (citation omitted). When imposing a sentence, the sentencing court must consider "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). "[A] court is required to consider the particular circumstances of the offense and the character of the defendant." *Commonwealth v. Griffin*, 804 A.2d 1, 10 (Pa. Super. 2002). In particular, the sentencing court should refer to the defendant's prior criminal record, her age, personal characteristics, and her potential for rehabilitation. *Id.*

Instantly, the Commonwealth argues that the trial court erred in failing to apply the appropriate sentencing guidelines. *See* Commonwealth's Brief, at 23-25, 29-30. The Commonwealth acknowledges that the trial court later considered the correct sentencing guidelines with the deadly weapon enhancement, but maintains that the trial court's failure to do so at the outset, undermines the trial court's sentence. *See id.* at 30-31, 35. Additionally, the Commonwealth contends that the trial court improperly referenced a pre-trial plea offer as improper justification to deviate below the sentencing guidelines. *See id.* at 30-32. The Commonwealth concedes that the **trial court stated the plea offer was not a sentencing factor**, but nevertheless argues that the trial court improperly relied upon the plea offer. *See id.* at 32. Further, the Commonwealth posits that the trial court relied upon duplicative mitigation factors in fashioning its excessively lenient sentence. *See id.* at 29-30.

At the sentencing hearing, the trial court delineated the factors it considered as follows:

> I sat through the trial. There was a [PSI] conducted. I have reviewed the guidelines. Taken into consideration the victim impact testimony, letters from friends and relatives, as well as [Young]'s statement. I will note that [Young] is the mother of three small minor children. And I agree with what the victim said. We see too much gun violence in this country. And counsel pointed out that she [] had a valid permit to carry a gun. But her use of a gun that day was completely irresponsible. I don't buy the argument that this crime occurred in self-defense. I don't think that the victim's conduct in this matter justified the use of a firearm. [Young] could have easily walked away, minded her own business, and this whole incident wouldn't have occurred. However, I have taken into consideration other factors. And I don't think that [] Young needs to go to state prison for an

extended period of time. I'm going to give her a sentence that's below the guideline range. I have taken into consideration the factors in 42 Pa.C.S.A. [§] 9721 regarding protection of the public, the gravity of the offense as it relates to the impact of the life of the victim and on the community, as well as the rehabilitative needs of the defendant. Obviously, the victim in this case was impacted. The fear he must have felt that day and must continue to feel is probably indescribable. And that is a factor I've taken into consideration. Now, [section] 9722 of [the Sentencing Code] talks about what the [c]ourt needs to consider whenever it takes into consideration an order of probation. The criminal conduct of the defendant neither caused nor threatened serious harm. That's not a factor because [Young's conduct] did do those things. The defendant did not contemplate that her conduct would cause or threaten serious harm. Obviously, when you point a firearm in someone's direction and pull the trigger, that factor would not count. The defendant acted under strong provocation. I think [Young] did act under provocation. There was substantial grounds tending to excuse or justify the conduct of the defendant[,] though failing to establish a defense. I don't think that's a factor because [Young] could have easily walked away. The victim of the criminal conduct induced or facilitated its commission. I do find that he did[,] although [his conduct] certainly didn't justify [Young's] response. Defendant has compensated or will compensate the victim for the criminal conduct for any damage or injury. That's a factor. The defendant has no history or prior delinquency of criminal activity [and] has led a law[-]abiding life for [a] substantial period of time before the commission of the present crime. I find that, yes, that is a factor. Criminal conduct was the result of circumstances unlikely to reoccur. I do find that's a factor. Defendant's particularly likely to respond affirmatively to the probationary treatment. I do find that's a factor. Confinement of [the] defendant would entail excessive hardship to her dependents. I do find that's a factor.

N.T. Sentencing Hearing, 2/2/22, at 5-8.

Further, at the hearing on the Commonwealth's post-sentence motion, the trial court stated as follows:

I think the Commonwealth is correct. I didn't put in [the sentence] the guideline range. . . . So[,] I'm going to grant [its] motion as far as that's concerned.

The starting point would be with a prior [r]ecord [s]core and [o]ffense [g]ravity [s]core of zero. I do find that the deadly weapon enhancement applies. The guideline range would be a minimum of 22 to [] 36 months, plus 18 months for the enhancement. So[,] the starting point would be 40 months minimum.

* * *

I think that a departure from the guidelines is appropriate. . . . It's well established that sentencing guidelines are purely advisory in nature. The [d]efendant has no right to have other factors take preeminence or be exclusive. Therefore, to have the guidelines considered, whatever they may provide, does not change h[er] rights. Likewise, the prosecutor has no right to have a particular sentence imposed. Most important, the [c]ourt has no duty to impose a sentence considered appropriate by the commission.

I put my reasons on the record for departing [from] the guidelines, quoting some of the standards used for when appropriate. I found that there was a strong provocation from the victim, that the victim induced or facilitated [Young]'s conduct. And [that Young's conduct was] not justified. But there is no compensation due, because there was certainly no physical injury. [Young] has no criminal history. I find that it's not likely to recur. I find that [Young] is likely to respond to probation, that confinement would be an excessive hardship to [Young's children]. [Young] has three minor children, ages 11, 3[,] and 2. I find that if she served a long prison sentence in state prison, it would have a tremendous negative effect on them.

And [this] **isn't a reason to depart** [from the guidelines], but the [c]ourt's sentence is not that much different than what the Commonwealth thought was an appropriate sentence at the time it made a plea offer. . . . [Young] didn't take the [Commonwealth]'s plea offer. [Young] went to trial and she was found guilty. And now she is facing a substantially harsher sentence if I went along with the Commonwealth's sentencing recommendation.

[Young] doesn't need to spend four and a half years in state prison. She made a stupid, terrible mistake. And the [c]ourt's sentence that I issued, I think, reflects that.

N.T. Post-Sentence Motion Hearing, 2/10/22, at 7-9 (emphasis added) (citations and quotations omitted).

Our review of the record, and the above excerpts, belies the Commonwealth's claims. As conceded by the Commonwealth, the trial court stated that the Commonwealth's plea offer was not a reason to depart from the guidelines. **See id.** at 9. Therefore, as acknowledged by the Commonwealth, the trial court **did not** consider that improper factor.

Additionally, as acknowledged by the Commonwealth, the trial court did reconsider its sentence with the appropriate guidelines and still found sufficient mitigating factors to deviate from the sentencing guidelines. **See id.** at 7-9; **see also** Trial Court Opinion, 3/31/23, at 1-3 (trial court indicating its intention to include factors considered at February 2, 2022 sentencing hearing in February 10, 2022 post-sentence motion hearing); N.T. Sentencing Hearing, 2/2/22, at 5-8. Therefore, to the extent that the Commonwealth argues the trial court considered the incorrect guidelines, this claim is disproved by the record.[17] Moreover, our review reveals that the

_____

[17] We are cognizant that the deadly weapon enhancement provisions of the sentencing guidelines provide that the enhancement "**shall** apply to each conviction offense for which a deadly weapon is possessed or used." 204 Pa. Code § 303.10(a)(4) (emphasis added). Additionally, the trial court may not disregard an applicable enhancement when determining the appropriate sentencing ranges. **See Commonwealth v. Cornish**, 589 A.2d 718, 720 (Pa. Super. 1991). Further, "[i]t is imperative that the sentencing court determine the correct starting point in the guidelines before imposing sentence." **Id.**; **see also Commonwealth v. Diamond**, 945 A.2d 252, 259 (Pa. Super. 2008) ("[T]he sentencing court must correctly apply the
*(Footnote Continued Next Page)*

Commonwealth's argument that the trial court did not understand the guidelines is also belied by the record. At the February 10, 2022 post-sentence motion hearing, the trial court agreed with the Commonwealth's assessment of the guidelines, and endeavored to correct its error in misstating those guidelines at the February 2, 2022 sentencing hearing. *See* N.T. Post-Sentence Motion Hearing, 2/10/22, at 7-9; Order, 2/10/23, at 1.

Furthermore, upon review of the record, it is apparent that the trial court considered all the relevant factors under 42 Pa.C.S.A. § 9721(b) in deviating from the sentencing guidelines and fashioning its sentence. The trial court

_____

sentencing guidelines to reach the correct point of departure, before exercising its discretion to depart from the guidelines in any particular case. These rules apply to the deadly weapon enhancement."). Therefore, if "the trial court erroneously calculates the starting point under the guidelines," we will vacate the judgment of sentence and remand for resentencing. *Commonwealth v. Scullin*, 607 A.2d 750, 754 (Pa. Super. 1992).

Instantly, the Commonwealth is correct that the trial court was required to apply the deadly weapon enhancement to the sentencing guidelines. *See Cornish*, *supra*. However, the trial court's initial failure to properly state and consider the enhanced sentencing guidelines at the February 2, 2023, sentencing hearing does not end our review.

It is clear from the record, as we detailed *supra*, that the trial court **agreed** with the Commonwealth, reconsidered Young's sentence with the proper guidelines' calculation, and resentenced Young to the same sentence. *See* N.T. Post-Sentencing Motion Hearing, 2/10/23, at 7-9 (trial court acknowledging error on record, and agreeing it should have applied deadly weapon enhancement); *see also* Order, 2/10/23, at 1 (granting Commonwealth's post-sentence motion, applying enhanced guidelines, resentencing Young to same sentence); Trial Court Opinion, 3/31/23, at 1-3. Accordingly, the question before this Court is whether the trial court abused its discretion in deviating from the enhanced sentencing guidelines, which we address *infra*. *See Diamond*, *supra*.

- 14 -

also had the benefit of a PSI. *See* N.T. Sentencing Hearing, 2/2/22, at 5-6; *see also Commonwealth v. Ventura*, 975 A.2d 1128, 1133 (Pa. Super. 2009) (citation omitted) (where trial court informed by PSI, it is presumed trial court was aware of all appropriate sentencing factors and considerations; where trial court has been so informed, "its discretion should not be disturbed"). Additionally, the trial court listed numerous factors detailing why deviation below the guidelines was appropriate. *See* N.T. Sentencing Hearing, 2/2/22, at 5-8; N.T. Post-Sentence Motion Hearing, 2/10/22, at 7-9. Therefore, our review confirms that the trial court considered all relevant sentencing factors, and appropriately set forth its reasons for imposing a below-the-guidelines sentence. *See Ventura*, *supra*; 42 Pa.C.S.A. § 9721(b); *see also Commonwealth v. Macias*, 968 A.2d 773, 778 (Pa. Super. 2009) (appellate court cannot reweigh sentencing factors in place of trial court merely because trial court did not weigh factors as appellant would have liked). Accordingly, we conclude that the trial court did not abuse its discretion in imposing Young's sentence, and that the Commonwealth's challenges to the discretionary aspects of the sentence are without merit. *See Robinson*, *supra*.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: <u>12/8/2023</u>