J-S77016-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| FRANK ADAM YEAGER | |
| Appellant | No. 3351 EDA 2013 |

Appeal from the Judgment of Sentence October 21, 2013
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s): CP-39-CR-0000377-2013

BEFORE:  STABILE, J., JENKINS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY JENKINS, J.:                **FILED DECEMBER 22, 2014**

Appellant, Frank Adam Yeager, appeals from the judgment of sentence entered in the Lehigh County Court of Common Pleas following his bench trial conviction for attempted rape.[1]  We affirm.

In its opinion, the trial court fully and correctly sets forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them.

Appellant raises the following issues for our review:

> WHETHER THE [TRIAL] COURT ERRED IN CLASSIFYING [APPELLANT] AS A SEXUALLY VIOLENT PREDATOR [(SVP)] WHEN THE COMMONWEALTH FAILED TO PROVIDE THE CLEAR AND CONVINCING EVIDENCE NECESSARY FOR

---

[*] Retired Senior Judge assigned to the Superior Court.
[1] 18 Pa.C.S. § 901(a) [18 Pa.C.S. § 3121(a)(1)].

SUCH A CLASSIFICATION AS PER TITLE 42 [PA.C.S.] § 9794.5?

WHETHER THE [TRIAL] COURT ABUSED ITS DISCRETION IN IMPOSING A MANIFESTLY UNREASONABLE MINIMUM SENTENCE THAT EXCEEDED THE AGGRAVATED RANGE OF THE SENTENCING GUIDELINES, WAS NOT SUPPORTED BY A FULL REVIEW OF ALL APPROPRIATE FACTORS APPLICABLE TO [APPELLANT'S] CIRCUMSTANCES AND WAS BASED ON OF THE SPECULATIVE FUTURE CONDUCT OF [APPELLANT]?

Appellant's Brief at 7.

Our review of Appellant's SVP status implicates the following principles:

The determination of a defendant's SVP status may only be made following an assessment by the Board and hearing before the trial court. In order to affirm an SVP designation, we, as a reviewing court, must be able to conclude that the fact-finder found clear and convincing evidence that the individual is a sexually violent predator.

As with any sufficiency of the evidence claim, we view all evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth. We will reverse a trial court's determination of SVP status only if the Commonwealth has not presented clear and convincing evidence that each element of the statute has been satisfied.

*Commonwealth v. Fuentes*, 991 A.2d 935, 941-42 (Pa.Super.2010).

Regarding Appellant's discretionary aspects of sentencing claim, we observe:

[T]he proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion. ...[A]n abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or

- 2 -

the result of partiality, prejudice, bias or ill-will. In more expansive terms, our Court recently offered: An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it.

***Commonwealth v. Moury***, 992 A.2d 162, 169-70 (Pa.Super.2010)

(internal citations omitted).

Further, we note that "[c]hallenges to the discretionary aspects of sentencing do not entitle a petitioner to review as of right." ***Commonwealth v. Allen***, 24 A.3d 1058, 1064 (Pa.Super.2011). Before this Court can address such a discretionary challenge, an appellant must comply with the following requirements:

An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test: (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

***Allen***, 24 A.3d at 1064.

Here, Appellant filed a timely notice of appeal, and preserved his issues in a post-sentence motion. Further, Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal pursuant to Pa.R.A.P. 2119(f). See Appellant's Brief, p. 10. Further, Appellant has raised a substantial question for our review. *See Commonwealth v. Griffin*, 804 A.2d 1, 7 (Pa.Super.2002) (holding a "claim that the sentencing court imposed an unreasonable sentence by sentencing outside the guideline ranges presents a 'substantial question' for the Superior Court's review."). Thus, we can properly address Appellant's two issues on appeal.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable William E. Ford, we conclude Appellant's issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions presented. (*See* Trial Court Opinion, dated March 13, 2014, at 6-16) (finding: (1) Commonwealth proved Appellant was an SVP with clear and convincing evidence, including Sexual Offenders Assessment Board (SOAB) licensed psychologist's assessment, which considered all relevant factors listed in 42 Pa.C.S. § 9799.12, including Appellant's predatory behavior and mental abnormality of paraphilia in determining Appellant's SVP status; (2) court properly sentenced Appellant outside of guidelines where sentencing guidelines did not provide sufficient protection for community from

Appellant, considering Appellant's premeditated plan to rape victim while Appellant was under ARD supervision, Appellant's status as an SVP, his alcoholism, and his failure to properly seek assistance for deviant compulsions despite recognition of mental health problems; court also considered significant impact of crime on victim, who was a total stranger; court considered mitigating factors such as Appellant's own victimization over his lifetime, supportive family and friends, Appellant's acknowledgement of wrong-doing, his humble approach and sincere apology; and court set forth sentencing guidelines on record and stated all reasons for deviating from the guidelines at sentencing hearing). Accordingly, we affirm on the basis of the trial court's opinion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/22/2014

# IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA

## CRIMINAL DIVISION

COMMONWEALTH OF
PENNSYLVANIA

v.

FRANK ADAM YEAGER,

       Defendant

:
:
:
:
:
:
:
:
:

No. CP-39-CR-0000377-2013

(Superior Court No. 3351 EDA 2013)

\* \* \* \* \* \* \* \*

Matthew S. Falk, Chief Deputy District Attorney,
    on behalf of the Commonwealth

Michael E. Brunnabend, Assistant Public Defender,
    on behalf of the defendant

\* \* \* \* \* \* \* \*

William E. Ford, Judge

## Pa.R.A.P. 1925(a) O P I N I O N

Defendant, Frank Adam Yeager, entered a guilty plea to attempted rape. The court also found defendant to be a sexually violent predator (SVP) and then sentenced him to confinement in the state penitentiary for not less than ten years to not more than twenty years. Defendant timely filed the present appeal to the Superior Court of Pennsylvania. In the appeal, defendant challenges the sentence and the decision that he is an SVP. The court's decisions on these subjects were proper as I explain in this opinion filed under Pa.R.A.P. 1925(a).



# IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA

## CRIMINAL DIVISION

COMMONWEALTH OF
PENNSYLVANIA

v.

FRANK ADAM YEAGER,

Defendant

:
:
:
:
:
:
:
:
:

No. CP-39-CR-0000377-2013

(Superior Court No. 3351 EDA 2013)

\* \* \* \* \* \* \* \*

Matthew S. Falk, Chief Deputy District Attorney,
   on behalf of the Commonwealth

Michael E. Brunnabend, Assistant Public Defender,
   on behalf of the defendant

\* \* \* \* \* \* \* \*

William E. Ford, Judge

### Pa.R.A.P. 1925(a) O P I N I O N

Defendant, Frank Adam Yeager, entered a guilty plea to attempted rape. The court also found defendant to be a sexually violent predator (SVP) and then sentenced him to confinement in the state penitentiary for not less than ten years to not more than twenty years. Defendant timely filed the present appeal to the Superior Court of Pennsylvania. In the appeal, defendant challenges the sentence and the decision that he is an SVP. The court's decisions on these subjects were proper as I explain in this opinion filed under Pa.R.A.P. 1925(a).

## Procedural History

On April 29, 2013, defendant entered a guilty plea to Count 1 of the criminal information, attempted rape, 18 Pa.C.S. § 3121(a)(1). Under a plea bargain, the Commonwealth withdrew two firearms and a possession of instruments of crime charges. There was no plea bargain as to the sentence for the attempted rape.

Attempted rape is a felony of the first degree and is a Tier III Megan's Law offense, 42 Pa.C.S. § 9799.14(d). Because this is a sexually violent offense, after defendant entered his guilty plea, I directed that the Commonwealth's Sexual Offenders Assessment Board (SOAB) assess the defendant to assist in determining if he is an SVP, 42 Pa.C.S. § 9799.24(a). I also ordered the preparation of a pre-sentence investigation report.

After completion of SOAB's assessment, the Commonwealth filed "Commonwealth's Motion to Classify Defendant as a Sexually Violent Predator" on August 1, 2013.

On October 21, 2013, I conducted a hearing on the Commonwealth's motion as required by 42 Pa.C.S. § 9799.24(e). At the conclusion of that hearing, I advised the parties that the court found defendant to be an SVP as defined at 42 Pa.C.S. § 9799.12. After the presentation of additional evidence, I sentenced the defendant for the attempted rape to state confinement of not less than ten years to not more than twenty years.

On October 30, 2013, the defendant filed a post-sentence motion. I denied that by order dated November 5, 2013. Defendant filed the present timely notice of appeal to the Superior Court on December 3, 2013.

2

In response to an earlier order, the defendant filed "Defendant's Concise Statement of Matters Complained on Appeal" (Concise Statement) on December 18, 2013. There are three allegations of error in the Concise Statement. The first two are challenges to the propriety of the sentence. The third contests the SVP determination.

## Factual Background

The victim was a saleswoman for Pulte Homes at its new development in Upper Macungie Township, Lehigh County. On November 25, 2012, just before closing time at 7:00 p.m., she was alone in the office at the development. The defendant entered the office and asked the victim if she would show him one of the model homes. The victim became suspicious because of the way the defendant was acting and because he did not ask for information about the home. She told him to look at the home himself. He went to the model home and was there for about 45 minutes. It was defendant's plan to get the woman alone in an upstairs bedroom of the model home and to rape her there. When he was upstairs in the model home, he looked from the windows to see if the victim was coming. To prepare for the rape, he closed the curtains in a bedroom and turned off the lights.

When the victim did not come to the model home, defendant returned to the office and told her that there was a water leak in the home and he wanted to show it to her. She was still suspicious and she refused to go with him. The defendant continued to ask her to inspect the leak. A male co-worker of the victim then entered the office at which point the defendant quickly left. Defendant went to his pickup truck and waited for the male co-worker to leave. After a while, the defendant got tired of waiting and drove off.

In various statements, the defendant admitted that it was his plan to lure the victim

3

into a bedroom on the second floor of the model home and to rape her there. He stated that he chose the office closing time because of the likelihood that the woman would be alone.

Defendant fantasized about raping women for many months before this incident. He developed a plan for the rape of this victim. Included in his statement to the pre-sentence investigator was the following:

> I did a massive on-line search of these people (realtors) . . . I had a plan of action. . . For three months, I drove around every Sunday. I used my truck-driving skills to map out my route. Once I lost my job, I really put myself into it. It was full-time work. I want to attack every girl I see so I was drinking all the time. . . I had a profile. I wanted someone, one of them pretty looking Paris Hilton type thing. I had a very specific guideline. . . The urges were so compelling, I was fighting it with alcohol.

On December 3, 2012, the police executed search warrants of the defendant's pickup truck and his home. At the defendant's home, they found numerous realty packages, the victim's business card and handwritten notes and pictures drawn by the defendant about rape. Among the items was a note (Commonwealth's Exhibit 2, 10/21/13 hearing) written by the defendant which begins "11/15/12, 7:14 a.m.." The attempted rape occurred on November 25, 2012, later in the day. The note reads:

> If your (sic) reading this, I found a realtor woman and raped her. I have been planning and have wanted this my whole life. . . . After the rape, I have to shut down because I know I will either get caught and go to jail the rest of my life or keep raping until I am stopped. I know it is wrong but I cannot fight the urges. I enjoy this when I sit in the back of some shopping center when there (sic) about to close the hair salon and a woman comes out all alone. I sit, watch her, rubbing myself with a knife in one hand knowing I can rape her at any time or go into an open house in some new development and no one else is around but some realtor bitch and that I could rape her and know

4

(sic) one will hear her scream. No one will come by or in the park watch some bitch jogging and no one else is around. I truly enjoy the hunt and cannot wait for my prize.

Among defendant's materials at his home was a suicide note which includes the statement that he planned to rape two other realtors instead of the victim but the other realtors were accompanied by a number of people. Defendant wrote that he would kill himself after the rape by setting the model home on fire. There were also drawings by the defendant of him raping women.

When the state police executed the search warrant on defendant's pickup truck, they found matches, a lighter, knives, binoculars, a ski mask, gloves, rope, two handguns, several magazines and ammunition, a chain, padlocks, duct tape and realty brochures. In none of the hearings did defendant contest what is described to this point in the Factual Background section.

Defendant had contemplated suicide often before the date of this crime. Before he was arrested, he recognized that he had mental health issues. He pursued only limited talk therapy for his psychological problems. Defendant has regularly and increasingly abused alcohol over the past decade. There were many episodes of defendant's becoming intoxicated in the weeks leading up to this crime. Defendant admitted that his alcoholism fueled what he planned and what he did to the victim.

There is considerable believable evidence in the record about defendant's being cruelly ridiculed throughout his life due to his physical appearance. Defendant was raised by caring parents. He lived with them until he was arrested. Defendant's parents took extraordinary measures to assist him with his physical issues and to otherwise attempt to

5

properly raise and then guide him. Defendant has family and friends who trust and respect him.

The victim provided an impact statement for the preparation of the pre-sentence report. She testified at the sentencing. She has been significantly affected by defendant's attempted rape of her. While she continues to work in real estate, she considers changing careers. Her work has become a "constant source of fear and anxiety." Every morning she checks the Megan's Law updates and now carries some unspecified item for protection because of her fear of unknown people and isolated places. Her work performance has suffered. She feels stress when unknown people enter her office. Her family has been affected because of their concern for her. Her co-workers have taken on added responsibilities so she is not alone in the office. She has entered therapy to cope with the effects of this crime which include panic attacks. She stated, "The most devastating consequence of this crime has been that my ability to trust people has been taken away, and I no longer view people the way I once did."

The victim, the prosecuting state trooper and the prosecuting attorney asked that the maximum sentence be imposed primarily because of the danger that defendant poses to women.

## Discussion and Conclusions of Law

### The Sentence

Defendant's first allegation of error in the Concise Statement is: "The sentence imposed far exceeded the sentence guidelines and was the maximum allowed by law. The court failed to set forth distinct and non-repetitive reasons for the sentence deviation or

6

otherwise relied on factors or considerations that were either otherwise already factors in the guideline calculations or were irrelevant to any deviation." The second contention in the Concise Statement, which is related to the first, is: "The court imposed the deviation based upon speculation or fear of future danger the defendant might pose to society without justification." Both of these contentions lack merit.

In explaining the applicable standard of review, the Superior Court has stated:

> Sentencing is a matter vested in the sound discretion of the sentencing judge and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill-will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Fullin*, 892 A.2d 843, 847 (Pa.Super. 2006) (citing *Commonwealth v. Rodda*, 723 A.2d 212, 214 (Pa.Super. 1999)(*en banc*).

Defendant does not contest the legality of his sentence nor assert that the sentence violated the plea bargain he entered with the Commonwealth. Also, defendant does not claim innocence. Rather, with these sentencing challenges raised on appeal, the defendant has implicated the discretionary aspects of the sentence. *Commonwealth v. Griffin*, 804 A.2d 1, 7 (Pa.Super 2002).

In *Commonwealth v. Hyland*, 875 A.2d 1175 (Pa.Super. 2005), the Superior Court stated:

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to appellate review as of right (citation omitted). Prior to reaching the merits of a discretionary sentencing issue: [the Superior Court]

7

conduct[s] a four part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 1410 [now Rule 720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Id.* at 1183 (citations omitted).

Defendant timely filed a notice of appeal. Additionally, the challenge to the discretionary aspects of the sentence was properly preserved in that defendant filed a post-sentence motion which raised this subject. The adequacy of defendant's appellate brief is a determination to be made by the Superior Court. Accordingly, the only issue for me to address is whether "there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code."

A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Sierra*, 752 A.2d 910, 913 (Pa. Super. 2000) (quoting *Commonwealth v. Brown*, 741 A.2d 726, 735 (Pa. Super. 1999)).

Pertinent to this case, it has been held that "[a] claim that the sentencing court imposed an unreasonable sentence by sentencing outside the guideline ranges presents a 'substantial question' for the Superior Court's review." *Commonwealth v. Griffin*, 804 A.2d at 7 (citation omitted). Here, the sentence I imposed exceeded the sentence guidelines and was the maximum allowed by law. Because defendant's sentencing

8

challenge potentially raises a substantial question, I now explain my reasons for imposing defendant's sentence.

Sentencing judges are encouraged to adhere to the sentencing guidelines from the Pennsylvania Commission on Sentencing. *Commonwealth v. Mouzon*, 571 Pa. 419, 423-24, 812 A.2d 617, 620 (2002). However, it is within the discretion of the courts to sentence outside the guidelines. *Id.* at 425, 812 A.2d at 621. If the sentence imposed is outside the guidelines, the trial court must indicate that it understood the suggested range and make its reasons for imposing the sentence a part of the record. *Commonwealth v. Tirado*, 870 A.2d 362, 366 (Pa.Super. 2005); 42 Pa.C.S. § 9721(b).

I set forth the guidelines on the record. N.T., 10/21/13, pp. 101-102. Before I imposed the sentence, I then stated the reasons for the sentence. I noted important mitigating factors including the defendant's own victimization over a lifetime, supportive family and friends, his acknowledgment of wrong-doing, his humble approach and sincere apology. N.T., (10/21/13), pp. 140-141. There were other mitigating factors, including those in the comprehensive presentence report, which I did not state at that point but which I considered. The existence of all of these mitigating factors made the imposition of the sentence in this case difficult. I gave appropriate weight to these mitigating factors. I then set forth specific reasons for deviating from the sentencing guidelines.

At the sentencing hearing, the district attorney, Matthew Falk, Esquire, stated a number of reasons why I should deviate from the guidelines and impose the maximum sentence. His reasons were accurate and convincing. After he spoke, I advised the parties, "I adopt the reasons stated by the district attorney for deviating from the guidelines" except

9

for his argument about the effect of the crime on other realtors. N.T., 10/21/13, p. 143. The reasons were defendant's premeditated plan to rape the victim, the significant impact of the crime on the victim, defendant's being on ARD supervision at the time that he committed the attempted rape, the defendant's being a total stranger to the victim, defendant's being found an SVP (see *Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa.Super. 2006)), his out-of-control and untreated alcoholism, and defendant's seeking only preliminary therapeutic assistance for his deviant compulsions despite his recognition of his mental health problems. I pointed out how the defendant has acted on certain fantasies and obsessions by investigating women whom he targeted and by then stalking them. There was the "rape kit" that defendant assembled which included handguns, mask and duct tape. The defendant's crime had a devastating effect on the victim after two contacts with her on the day of the crime in defendant's attempts to lure her into the model home. Finally, I explained to the parties the predominating factor for deviation, namely, the defendant is a dangerous man.

I concluded that the guidelines, even in the aggravated range, did not provide sufficient protection for the community from defendant based on his crime. A sentence within the guidelines would have been inadequate in that it would not provide enough time within which to get to the root of defendant's deep-seated rehabilitative needs, provide appropriate punishment and protect women from him.

I considered the general standards for sentencing stated at 42 Pa.C.S. § 9721(b) which are "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the

10

defendant." *See Commonwealth v. Walls,* 592 Pa. 557, 568-69, 926 A.2d 957, 964 (2007).

As to defendant's rehabilitative needs, I told him:

> You should also recognize that when the sentence is imposed today, it is not the end of the world. My hope, of course, our hope is that in the course of imprisonment, you continue to get treatment for the various issues that you have, and actually in our state system, we have a better opportunity for that than we have in the county system. The real impetus, the real purpose of a sentence is hoping that you get a grasp of these many issues and you never harm anybody again.

N.T., 10/21/13, pp. 140-141. (As the parties are aware, on the sentencing order and in a follow-up letter to the corrections authorities, I elaborated on defendant's mental health and alcohol issues to assist in the classification process.) I also wanted the sentence to serve as a specific deterrent from defendant's commission of additional crimes.

Defendant's contention that I speculated about future misconduct in reaching the conclusion that he is a danger to the community is wrong. The sentencing judge is charged with the responsibility of determining whether a defendant is a danger to the community. I formed my conclusions on this topic from the facts, not from unsupported conjecture.

In summary, I considered the sentencing guidelines but I deviated from them for all of the reasons I have set forth. I advised the parties of all these reasons. The sentence that I then entered was reasonable and necessary with full consideration of the standards of the Sentencing Code.

Sexually Violent Predator Determination

In his third and final allegation of error, defendant alleges: "The court's determination of defendant as a sexually violent predator was not supported by sufficient

evidence or was otherwise against the weight of all the evidence presented." For the court to make this determination, the Commonwealth must prove that the defendant is a sexually violent predator by clear and convincing evidence. 42 Pa.C.S. § 9799.24(e)(3). The Commonwealth met its burden of proof.

SVP is defined at 42 Pa.C.S. § 9799.12 as

> an individual convicted of an offense specified in . . .
> 42 Pa.C.S. § 9799.14(d) . . . who, on or after the effective
> date of this subchapter, is determined to be a sexually
> violent predator under section 9799.24 (relating to
> assessments) due to a mental abnormality or personality
> disorder that makes the individual likely to engage in
> predatory sexually violent offenses.

Doctor Thomas Haworth, the licensed psychologist who conducted the SOAB assessment, considered all of the relevant factors listed at 42 Pa.C.S. § 9799.24(b)(1) in arriving at his conclusion that defendant is an SVP. He testified about the factors at the Megan's Law hearing. Also, Doctor Robert Gordon, the licensed psychologist who testified for the defense, considered these factors in concluding that defendant is not an SVP. I evaluated the testimony of these experts and analyzed the factors in deciding that defendant is an SVP. As to the factors, each must be examined, but there is no

> requirement that all of them or any particular number of
> them be present or absent in order to support an SVP
> designation. The factors are not a checklist with each one
> weighing in some necessary fashion for or against SVP
> designation. Rather, the presence or absence of one or
> more factors might simply suggest the presence or absence
> of one or more particular types of mental abnormalities.

*Commonwealth v. Feucht*, 955 A.2d 377, 381 (Pa.Super. 2008) (internal citation omitted).

Instead, "[t]he question for the SVP court is whether the Commonwealth's evidence,

12

including the Board's assessment, shows that the person convicted of a sexually violent offense has a mental abnormality or disorder making that person likely to engage in predatory sexually violent offenses." *Id.*

It is undisputed that defendant was convicted of attempted rape, a sexually violent offense listed at section 42 Pa.C.S. § 9799.14(d). Therefore, the issue was whether defendant suffered from a "mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses."

Mental abnormality is defined as "[a] congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons." 42 Pa.C.S. § 9799.12.

According to Doctor Haworth, the psychologist from the SOAB, defendant has the mental abnormality of paraphilia, not otherwise specified (NOS). Paraphilia (NOS) is a disorder which is listed in the *Diagnostic and Statistical Manual IV (DSM-IV)*. Paraphilia (NOS) is also listed as a mental health disorder in *DSM-5*, which is the current *DSM*.

In the SOAB report (Commonwealth Exhibit C-1, 10/21/13), Doctor Haworth, paraphrasing the *DSM-IV,* defined paraphilia (NOS) "as being characterized by recurrent, intense, sexually arousing fantasies, sexual urges, or behaviors generally involving . . . non-consenting persons that occur over a period of at least six months," and "the individual has acted upon these urges or they have caused him marked distress or interpersonal difficulties." Doctor Haworth explained that these urges must be "recurrent, chronic, and lifelong" to meet this definition. During Doctor Haworth's testimony, he again gave this

13

definition of paraphilia (NOS). N.T., 10/21/13, pp. 19-21. Doctor Haworth agrees that paraphilia (NOS) is accurately defined in the *DSM*. After addressing defendant specifically, Doctor Haworth gave his convincing expert opinion that defendant has this paraphilia.

Doctor Robert Gordon, the defense licensed psychologist, testified that defendant does not have paraphilia (NOS) as he would define it and, therefore, defendant is not an SVP. He agrees though that the definition of paraphilia (NOS) used by Doctor Haworth is essentially the same in the *DSM-IV* as it is in the *DSM-5*. Doctor Gordon does not ascribe to this definition given by Doctor Haworth and set forth in the *DSM*. He believes it is "too confusing, too vague, too broad, too broadly worded." N.T., 10/21/13, pp. 82-84. Doctor Gordon acknowledges that defendant meets the criteria for paraphilia (NOS) as it is inaccurately (according to him) defined in the *DSM*. N.T., 10/21/13, pp. 77-78. It appears that Doctor Gordon's specific objections to the paraphilia (NOS) definition in the *DSM* are that the *DSM* inserted what he refers to as an arbitrary minimum time of six months for having the condition and the definition in the *DSM* does not adequately take into account the "subjective distress" that one must suffer in order to have this condition. N.T., 10/21/13, pp. 82-83. Further, according to Doctor Gordon, defendant had fantasies and nothing more. Defendant would never act on his fantasies. I rejected that testimony. Defendant did act on his fantasies in his preparations and attempts to lure the victim.

After consideration of the testimony of these experts and the specific facts of this case, it was my finding that the defendant suffers from the mental abnormality of paraphilia (NOS) as described by Doctor Haworth and defined in the *DSM*. Defendant has

14

had this condition from a point in childhood. His fantasies and urges were his primary preoccupation for years. The paraphilia (NOS) led to the sexual offending in this case.

I agreed with Doctor Haworth that defendant's condition is "recurrent, chronic and lifelong." Perhaps the defendant will reach the point through therapy that he can control these urges but defendant has only begun that process. I also accepted Doctor Haworth's testimony that defendant's condition overrode his ability to control these deviant urges and fantasies. It was evident from defendant's statements and writings that he has always recognized the criminality of action on his fantasies. Despite that knowledge, he made his preparations and tried to rape this young woman. Doctor Haworth was accurate that defendant "remains at an elevated risk for future sexually violent behavior."

Next, I had to decide if the mental abnormality makes the defendant likely to engage in predatory sexually violent offenses. "Predatory" is defined as "[a]n act directed at a stranger or at a person with whom a relationship has been initiated, established, maintained or promoted, in whole or in part, in order to facilitate or support victimization." 42 Pa.C.S. § 9799.12.

Doctor Haworth, the SOAB evaluator, confirmed what is probably obvious from the overwhelming evidence in this case that the defendant engaged in predatory behavior in his planning and victimization of the young woman. N.T., 10/21/13, pp. 21-22. According to Doctor Haworth, the victim was a stranger to the defendant even though the defendant may have watched her on previous occasions. She was a non-consenting individual to what defendant planned for her. According to Doctor Haworth, defendant's plan was victimization of this stranger. Thus, defendant engaged in predatory conduct. I

15

conclude that he is likely to engage in it again without the present sentence.

Defendant was properly found to be a sexually violent predator.

There is no merit to this appeal and, respectfully, it should be denied.

March 13, 2014

WILLIAM E. FORD, JUDGE

16