J-S15031-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
:
JOHN EMERY CYRAN :
:
Appellant : No. 1459 WDA 2019

Appeal from the Judgment of Sentence Entered May 22, 2019
In the Court of Common Pleas of Potter County Criminal Division at
No(s): CP-53-CR-0000160-2017

BEFORE: BENDER, P.J.E., OLSON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED APRIL 3, 2020**

Appellant, John Emery Cyran, appeals from the judgment of sentence

entered in the Court of Common Pleas of Potter County after a jury found him

guilty of Disorderly Conduct (M3) and Summary Harassment. Receiving an

aggregate sentence of 9 to 12 months' incarceration and a fine of $150.00,

Appellant raises three issues for our consideration. Specifically, he contends

his conviction for disorderly conduct was against the weight of the evidence,

he challenges the sentencing order to the extent it erroneously includes the

crime of misdemeanor Domestic Violence,[1] and he claims the court abused its

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Agreeing that an apparent scrivener's mistake caused the inclusion of the
Domestic Violence offense, both the trial court and the Commonwealth join
Appellant in his request that this Court remand for modification of the
sentencing order in this regard. As the record supports the trial court's opinion
and the parties' position on this issue, we remand the matter as requested.

sentencing discretion when it imposed an aggravated range sentence for Disorderly Conduct. Judgment of sentence is affirmed, but we remand to allow modification of the sentencing order as indicated.

The trial court sets forth the pertinent facts and procedural history as follows:

> By way of history, the Commonwealth charged Appellant with 27 counts of Possession of a Firearm Prohibited, 18 Pa.C.S.A. § 6105 (a)(1), *inter alia*, after an investigation surrounding an altercation Appellant had with the purported victim John Howard. The 27 counts were dismissed by the court on April 5, 2018, after a hearing on Appellant's Omnibus Pre-Trial Motion. The court found that Appellant's New York conviction for Tampering with a Witness was not an equivalent offense to Pennsylvania's crime of Intimidation of a Witness, which would prohibit Appellant from owning firearms. That matter was appealed by the Commonwealth to the Superior Court and the trial court was affirmed on February 1, 2019.
>
> Subsequently, the matter was scheduled for a jury trial on April 15 and 16, 2019. Appellant faced the remaining charges of Terrorist Threats (M1), Simple Assault (M2), Recklessly Endangering (M2), Disorderly Conduct (M3), and Harassment (S).
>
> At trial, the victim, Josh Howard testified that from May of 2017 through July of 2017, he was staying at his friend's camp and was given the task of cleaning the camp and removing some items left there by Mr. Howard's deceased uncle. N.T., 4/15/19 (Trial), at 1.
>
> Mr. Howard testified that prior to the incident in question, Mr. Cyran [Appellant] had purchased a truck from Mr. Howard's mother and refused to return her license plate. Mr. Howard took it upon himself to remove the plate from Appellant's truck one week before July 4, 2017. This resulted in an argument between Appellant and Mr. Howard.
>
> Mr. Howard testified that on July 4, 2017, he was mowing the lawn at the camp near the end of the driveway and adjacent to the

township road where Appellant approached in his pickup truck. N.T. at 5. Mr. Howard moved to the edge of the road. N.T. at 5. Mr. Howard estimated the time to be approximately 3:00 p.m. to 4:00 p.m. N.T. at 5, 6.

According to Mr. Howard, Appellant pulled into the driveway and rolled down his truck window and pointed a firearm at Mr. Howard and advised Mr. Howard, "If [you] knew what was good for [you, you] would mind [your] own business and shut [your] mouth." N.T. at 5. Mr. Howard testified that Appellant then drove up the driveway to the camp to pick up some items the owner of the camp had given to Appellant and upon his return down the driveway, he slowed his truck and again pointed the firearm at Mr. Howard advising Mr. Howard to "sleep with one eye open." N.T. at 7.

According to Mr. Howard, Appellant then left the property but later returned that evening as it was getting dark outside. Mr. Howard testified that this time when Appellant returned, his speech was slurred, and he was having difficulty holding the firearm which he again pointed at Mr. Howard. Mr. Howard advised Appellant that he was tired of being threatened and that if Appellant intended to do something to him then Appellant should do so. N.T. at 9.

Mr. Howard testified that Appellant then came out of his vehicle with an aluminum baseball bat, stumbled and fell to the ground. [Mr. Howard] testified Appellant advised "he was going to teach me once and for all to keep my mouth shut." N.T. at 10. Thereafter, Mr. Howard entered his own vehicle and drove to the cabin leaving Appellant at the end of the driveway. N.T. at 9-10. Thereafter, Mr. Howard contacted the police and the matter was investigated by Trooper Sebastian who interviewed Mr. Howard and Appellant and filed the charges against Appellant.

Trooper Sebastian testified that he interviewed Appellant[, who] denied threatening Mr. Howard. Appellant did acknowledge that he keeps a baseball bat in each of his vehicles including the truck he was operating on the day in question. Appellant claims that the bat which had been in the truck he was using on July 4, 2017, was given to a friend a few days ago but was unwilling to disclose to Trooper Sebastian the man's identity. N.T. at 35.

The Defense called Jessie Outman who testified that he was working with Appellant until approximately 4:00 p.m. on July 4,

2017. N.T. at 56. Mr. Outman testified that he never observed Appellant in possession of a firearm that day. N.T. at 56. Further, Mr. Outman testified that he was on Mr. Cryan's property on the day in question and did not see any firearms. N.T. at 57. After the testimony of Mr. Outman, the Commonwealth called Trooper Sebastian on rebuttal who testified that twenty-seven firearms were found on the property including one each in two vehicles of Appellant['s]. N.T. at 61. The Defense objected to that reference as it could [be] inferred that Appellant was tampering with evidence. N.T. at 85-86.

After the jury deliberated, [it] reached a verdict and found Appellant not guilty of Terrorist Threats (M1), Simple Assault (M2), and Recklessly Endangering (M2), but guilty of Disorderly Conduct (M3). As to the summary offense of Harassment, the court found Appellant guilty.

At the time of sentencing, the court [indicated it] carefully considered Appellant's prior record score, the lack of remorse and accountability including his reference to the probation officer completing the Pre-Sentence Investigation that he was "Railroads again." At sentencing, Appellant's only remark was "It did not happen." N.T., 5/15/19(Sentencing), at 6, 9-10.

The court also considered the impact on the victim and the community [caused by] the brandishing of a firearm, pointing it at his victim and the threats and affirmative steps to use the bat to intimidate or strike Mr. Howard. The court also believed that the rehabilitative needs of Appellant justified the sentence imposed. N.T. at 9-10. [After the denial of Appellant's post-trial motions, this timely appeal followed].

Trial court opinion, 8/21/19, at 1-5.

Appellant raises the following issues for our consideration:

1. Did the trial court err by indicating on its sentencing order that [Appellant] was convicted of a misdemeanor crime of domestic violence?

2. Did the trial court abuse its discretion by denying [Appellant's] post-sentence motion to set aside verdict and/or judgment of acquittal due to the fact the jury's verdict was against the weight of the evidence?

3.     Did the trial court abuse its discretion by sentencing [Appellant] in the aggravated range of the sentencing guidelines without placing any, let alone sufficient, reasons on the record at the time of sentencing?

Appellant's brief, at 2.

Having resolved Appellant's first issue in his favor, *see* footnote one, we address his remaining two issues.  In his second issue, Appellant argues the trial court erred in denying his post-trial motion for a new trial because the weight of the evidence showed his alleged interactions with the victim did not constitute disorderly conduct as that crime is defined by the General Assembly.  We disagree.

We do not review challenges to the weight of the evidence *de novo* on appeal.  ***See Commonwealth v. Rivera***, 983 A.2d 1211, 1225 (Pa. 2009).  Rather, we only review the court's exercise of its discretionary judgment regarding the weight of the evidence presented at trial.  ***See id***.  "[W]e may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice."  ***Commonwealth v. Champney***, 832 A.2d 403, 408 (Pa. 2003) (citations omitted).  A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when "the figure of Justice totters on her pedestal," or when "the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience."  ***Commonwealth v. Davidson***, 860 A.2d 575, 581 (Pa. Super. 2004) (citations omitted).

Section 5503 of the Crimes Code, Disorderly Conduct, provides, in relevant part:

**(a)** **Offense defined.—**A person is guilty of disorderly conduct if, with the intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he;

…

(4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

**(b)** **Grading.—**An offense under this section is a misdemeanor of the third degree if the intent of the actor is to cause substantial harm or serious inconvenience, or if he persists in disorderly conduct after reasonable warning or request to desist. Otherwise disorderly conduct is a summary offense.

**(c)** **Definition.—**As used in this section the word "public" means affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, any neighborhood, or any premises which are open to the public.

18 Pa.C.S. § 5503

By the victim's own testimony, Appellant argues, the three interactions between the two men took place in the driveway to a private camp, and not in a public place as required by the statute. The Commonwealth agrees the three interactions occurred on private property, but the undisputed evidence at trial established that at least one interaction in particular occurred at the end of the private driveway where it meets Butler Creek Road, which is a township road. N.T. 4/15/19, at 5. Specifically, the victim testified Appellant

came driving down the township road pointing a gun and yelling obscenities before parking nearby, and then approaching him with a baseball bat. N.T. at 5-6. Because Appellant committed these acts either on, alongside, or very close to the township road, the Commonwealth contends, he recklessly created a risk of public inconvenience, annoyance, or alarm in contravention of the statute.

In support of this position, the Commonwealth relies on **Commonwealth v. O'Brien**, 939 A.2d 912 (Pa.Super. 2007). In **O'Brien**, the victim was driving near his home on a private road in Lake Ariel, Pennsylvania, looking for his dog. The private road provided access to the community's residents and their invitees. O'Brien "approached the victim, used profane language, reached through an open window in the victim's vehicle, removed the victim's gloves from the dashboard and then used then to slap the victim." **Id.** at 913. O'Brien subsequently was issued citations for harassment and disorderly conduct, for which he was subsequently found guilty.

On appeal, O'Brien challenged the sufficiency of the evidence supporting his disorderly conduct conviction where, he claimed, his acts did not occur in a public place or cause public inconvenience, annoyance or alarm and where there was no evidence that he intended to cause or recklessly created a risk thereof. We disagreed, finding "ample evidence to sustain the conviction" where the setting at issue, though nominally a private road, "'clearly constitutes a place to which the public or a substantial group,' namely the

surrounding community's residents and their invitees, have access." *Id*. at 914 (internal quotations and citation omitted).

Likewise, in the case *sub judice*, the victim testified that Appellant engaged in threatening conduct, some of which included aiming a firearm at the victim, while either on or adjacent to a township road to which the public-at-large had open access. Accordingly, consistent with controlling precedent, we discern nothing shocking with the trial court's judgment that the weight of the evidence supported the jury's determination that the setting in question was "public" for purposes of the disorderly conduct statute.

In Appellant's his final claim, he challenges the discretionary aspects of his sentence. "It is well-settled that, with regard to the discretionary aspects of sentencing, there is no automatic right to appeal." **Commonwealth v. Mastromino**, 2 A.3d 581, 585 (Pa. Super. 2010). As such, an appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

> We conduct a four-part analysis to determine: (1) whether the appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa.R.Crim.P. [720]; (3) whether the appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).
>
> * * *
>
> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent

with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010) (quotation marks and some citations omitted).

Here, Appellant filed a timely Notice of Appeal, presented his claim in a post-trial motion for reconsideration of sentence, and included a Rule 2119(f) Statement in his appellate brief. Moreover, Appellant's assertion that the trial court's imposition of an aggravated range sentence without stating sufficient supporting reasons on the record raises a substantial question. *See Commonwealth v. Wellor*, 731 A.2d 152, 155 (Pa. Super. 1999) (concluding a claim that "the lower court failed to state on the record adequate reasons for imposing sentences in the aggravated range" raises a substantial question). Accordingly, we will review Appellant's claim on its merits.

Our standard of review for challenges to discretionary aspects of sentencing is well settled:

[s]entencing is vested in the discretion of the trial court, and will not be disturbed absent a manifest abuse of that discretion. An abuse of discretion involves a sentence which was manifestly unreasonable, or which resulted from partiality, prejudice, bias or ill will. It is more than just an error in judgment.

*Commonwealth v. Downing*, 990 A.2d 788, 792–93 (Pa. Super. 2010) (citation omitted).

Pursuant to Section 9721(b), "the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the

impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). "[T]he court shall make as part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed." *Id*

Nevertheless, "[a] sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statute in question...." ***Commonwealth v. Crump***, 995 A.2d 1280, 1283 (Pa.Super. 2010). Rather, the record as a whole must reflect the sentencing court's consideration of the facts of the case and the defendant's character. *Id*. "In particular, the court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation." ***Commonwealth v. Griffin***, 804 A.2d 1, 10 (Pa.Super. 2002).

Instantly, the record belies Appellant's contentions that the court failed to consider and weigh relevant information regarding Appellant's character, mitigating factors, and rehabilitative needs. Specifically, the court indicated it was struck by Appellant's lack of remorse—reflected in Appellant's accusation that his probation officer was "railroad[ing] him again," and his truncated allocution in which he said only "It did not happen." Further influencing the court's selection of an aggravating guideline range sentence was the impact on the victim effected by Appellant's use of a firearm, which represented an aggravating factor not contemplated within the elements of the disorderly conduct charge. Finally, the court noted it considered that an

aggravated range sentence would best serve Appellant's rehabilitative needs. N.T., 5/15/19, at 9-10.

As we find the court's reasons sufficient to support an aggravated guideline range sentence, we accept the sentence imposed. Accordingly, Appellant is not entitled to relief on his discretionary aspects of sentencing claim.

Judgment of sentence affirmed. Remand to allow modification of sentencing order consistent with this decision. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/3/2020