J-S12041-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DEANDRE WIGGINS | : | |
| | : | |
| Appellant | : | No. 1754 EDA 2024 |

Appeal from the Judgment of Sentence Entered May 17, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001632-2023

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DEANDRE WIGGINS | : | |
| | : | |
| Appellant | : | No. 1755 EDA 2024 |

Appeal from the Judgment of Sentence Entered May 17, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002330-2023

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DEANDRE WIGGINS | : | |
| | : | |
| Appellant | : | No. 1756 EDA 2024 |

Appeal from the Judgment of Sentence Entered May 17, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005248-2023

BEFORE:  STABILE, J., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED MAY 6, 2025**

Appellant, Deandre Wiggins, appeals from the aggregate judgment of sentence of 40 to 80 years' incarceration, imposed after he pled guilty, in three separate cases, to offenses including two counts of third-degree murder and five counts of aggravated assault with a deadly weapon. On appeal, Appellant solely challenges the discretionary aspects of his sentence. After careful review, we affirm.

The trial court summarized the facts of Appellant's three cases, as follows:

Facts - CP-51-CR-0001632-2023

On August 8, 2022, at approximately 11 p.m., [Appellant], … then [16] years old, shot at three individuals in a car in the parking lot of a Popeye['s] restaurant at 314 West Lehigh Avenue in Philadelphia, killing the [19]-year-old decedent, Aleczander Batte…, and injuring two others, Tanisha Castillo and Jonathan Lebron.

Mr. Lebron and Ms. Castillo arrived at the parking lot to pick up [Mr. Batte], who was the manager of the restaurant, at the end of his shift. [Mr. Batte] walked out of the restaurant with a young woman identified as Sarah, who left shortly after in a ride share, and [Mr. Batte] got into the back seat of Ms. Castillo's car. [Appellant], along with another male, approached the car, telling [Mr. Batte], "Don't talk to my girl[,]" or "Don't approach my girl." [Appellant] and the other males opened fire into the vehicle, striking all three victims. As [Appellant] and the other male were shooting, a third person got out of a different vehicle and joined in firing at the victims' car. Ms. Castillo, the driver, fled with the vehicle while the young men [continued to] shoot[] at them.

Using surveillance video from the restaurant, police tracked the vehicle [in which Appellant had left the scene] and identified [Appellant]. Furthermore, Sarah reported to police that [Appellant] admitted to her that he killed [Mr. Batte].

[Appellant] shot [Mr.] Batte numerous times in the face and head, killing him. Ms. Castillo suffered multiple gunshot wounds to her arms, back, and legs[,] and Mr. Lebron suffered multiple gunshot wounds to his back. Police took all three of them to the hospital, where officers interviewed [Ms. Castillo and Mr. Lebron]. Police recovered [48] 9mm fired cartridge casings ("FCCs") from the parking lot [of the Popeye's restaurant]. Three days later, when [Appellant] was arrested in connection with CP-51-CR-2330[-]2023, the firearm in his possession proved to be a ballistics match for one of the firearms used in [Mr. Batte's] murder.

Facts - CP-51-CR-0005248-2023

On August 12, 2022, at approximately 7:30 p.m., [Appellant] shot at four individuals on the porch of 5348 Charles Street in Philadelphia, killing the decedent, Jean Carlos Montanez Rivera…, and injuring three others. Surveillance video from a neighbor's [security] camera captured the incident. [Appellant], along with two other males, drove up to the house in a white Ford Focus. They exited the vehicle and began firing at the porch of 5348 Charles Street. All three males ran across the lawn to the porch, continuing [to] fir[e], then ran back to the car and fled the scene.

The [Ford Focus] was recovered later that night in the Whitehall Apartments parking lot, roughly half a mile away from the incident. The car's owner reported that, two days prior to the shooting, her car was stolen by three young black males wearing facemasks, but she could not identify them. [Appellant's] fingerprints were found inside the vehicle and a review of his Instagram account showed that he posted a photo [on] the evening of the shooting with individuals wearing the same clothing seen on the surveillance video, captioned[,] "Last night was krazyy [sic][,]" followed by three blood droplet emojis.

[Mr. Montanez Rivera] suffered gunshot wounds to the chest, thigh, and buttock. An autopsy revealed that the cause of death was multiple gunshot wounds, and the manner of death was ruled a homicide. Ruth Velasquez was shot in the arm and neck, causing her to be hospitalized for two weeks. David Ortiz was shot in the nose, … stomach, and … arms, requiring a two-month stay in the hospital. Maximo Abreu was shot in the right thigh and needed hospital care for just under one week. During a search of the crime scene, police recovered [25] 9mm FCCs.

Facts - CP-51-CR-0002330-2023

- 3 -

> On August 13, 2022, [Appellant] carjacked a blue Honda Accord … from the complainant, Darwin Vazquez Aldana, and witness/passenger[,] Jacqueline Garcia[,] near the 1600 block of Mascher Street in Philadelphia. [Appellant] was apprehended later that day while parked on the side of street.
>
> [Appellant] was in the car with four other occupants talking with the operators of another vehicle, a silver Toyota Rav4…, which was stopped in the middle of the street, when officers signaled for them to move. After running the tag, the Toyota was identified as stolen. As officers approached the Honda, [Appellant] jumped out of the vehicle and attempted to flee on foot. He was apprehended by one of the officers and taken back to the car, where the complainant identified [Appellant] and gave the officers consent to search the vehicle.
>
> In the car, officers found a 9mm handgun with an extended magazine under the front passenger seat. The firearm had one live round in the chamber and five live rounds in the magazine. The serial numbers were partially obliterated, but the officers were able to identify the number as TMR-12020. Ballistics testing proved the gun was a match to one of the firearms used in the murder on August 8, 2023.

Trial Court Opinion (TCO), 7/30/24, at 3-5 (some formatting altered; citations to the record omitted).

Appellant's three cases were consolidated for trial. On March 12, 2024, Appellant pled guilty, in all three cases, to an aggregate total of two counts each of third-degree murder, conspiracy to commit third-degree murder, carrying a firearm without a license, and carrying a firearm in public in Philadelphia; five counts of aggravated assault with a deadly weapon; and single counts of possession of a firearm by a minor, possession of a firearm by a person prohibited, possession of a firearm with an altered manufacturer's number, robbery of a motor vehicle, and conspiracy to commit robbery of a motor vehicle.

- 4 -

On May 17, 2024, the court conducted Appellant's sentencing hearing. There, the court first acknowledged that under the Sentencing Code, it was required to consider the seriousness of Appellant's offenses, the impact on the victims and the community, Appellant's rehabilitative needs, and his prior criminal record. N.T. Sentencing, 5/17/24, at 5. The court noted that Appellant was only 16 years old when he committed the instant crimes, yet he had already been arrested seven times, adjudicated delinquent four times, and had five juvenile commitments. *Id.* at 5-6. His criminal history included firearm and theft charges. *Id.* at 6-7. Appellant had also absconded from several juvenile delinquency placements. *Id.* The court stressed that it had

> tried to give [Appellant] the resources to enable [him] to acknowledge that [he was] on the wrong path, to take [him] away from the influences of those that may or may not have contributed to the path [he was] on. But, quite frankly, it failed.

*Id.* at 7-8.

The court then discussed the applicable sentencing guidelines, and stated that it had reviewed a presentence report. *Id.* at 8-9. The court detailed Appellant's childhood and family circumstances, mental health issues, educational history, substance abuse issues, and behavioral problems while incarcerated in this case. *Id.* at 9-14. The court also heard from family members of Appellant's victims about the impact his crimes had on them and their families. *Id.* at 17-23. Additionally, the court listened to Appellant's allocution, during which he took "full accountability for [his] actions[,]" asked

for forgiveness, and expressed his desire to change, grow, and improve himself. *Id.* at 37.

At the close of the proceeding, the court imposed the aggregate sentence set forth, *supra*. Specifically, the court

> sentenced [Appellant] in CP-51-CR-0001632-2023 to [20] to [40] years of incarceration for third-degree murder, consecutive terms of [10] to [20] years of incarceration for conspiracy to commit murder and [5] to [10] years of incarceration for one of the aggravated assault charges, as well as concurrent terms of [5] to [10] years of incarceration on the second aggravated assault charge and [2] to [4] years of incarceration for [carrying a firearm without a license], for an aggregate term of [35] to [70] years of incarceration.
>
> In CP-51-CR-0005248-2023, th[e c]ourt sentenced [Appellant] to [20] to [40] years of incarceration for third[-]degree murder, consecutive terms of [5] to [10] years of incarceration for each of the three aggravated assault charges, and concurrent terms of [10] to [20] years of incarceration for conspiracy to commit third[-]degree murder and [2] to [4] years of incarceration for [carrying a firearm without a license], for an aggregate term of [35] to [70] years of incarceration.
>
> In CP-51-CR-0002330-2023, [Appellant] was sentenced to [5] to [10] years of incarceration for robbery of a motor vehicle and concurrent terms of [2] to [4] years of incarceration for conspiracy to commit robbery of a motor vehicle and [3] to [6] years of incarceration for [possession of a firearm with an obliterated manufacturer's number], for an aggregate term of [5] to [10] years of incarceration.
>
> The sentences for CP-51-0001632-2023 and CP-51-CR-0005248-2023 were ordered to be served concurrently, while the sentence for CP-51-CR-0002330-2023 was to be consecutive, for a total sentence across all three cases of [40] to [80] years of incarceration.[1]

_____

[1] The court imposed no further penalty for Appellant's remaining firearm offenses in each case.

TCO at 2 (unnecessary capitalization and footnotes omitted). After imposing this sentence, the court stated that "[t]he reason for the sentence is … very simple. Anything less would denigrate the seriousness of these offenses." N.T. Sentencing at 39.

Appellant filed a timely post-sentence motion for reconsideration of his sentence, and the court conducted a hearing on June 21, 2024. At the hearing, Appellant asked the court to reduce his sentence, citing his young age, and that he had accepted responsibility for his crimes. N.T. Hearing, 6/21/24, at 5. Appellant also expressed remorse for his actions, and argued that he had "rehabilitative needs that could be addressed with a less[er] sentence than the amount of time he received." *Id.* In response, the Commonwealth contended that Appellant's sentence was appropriate in light of the seriousness of his crimes. *Id.* at 7-8.

In ruling on Appellant's motion for reconsideration, the court began by reiterating the egregious facts of his three cases. *Id.* at 10-13. It then stated:

> [The Court]: I say [these facts] in detail because to give you any less of a sentence[,] I would be abdicating my responsibility. I understand that you think it's excessive. I take no joy in imposing it[,] knowing how long it's going to be. As the representative from the district attorney's office said, you will be in your 50s when you get out[,] as long as you [have] good behavior. Those other two people never got to see the light of day again. Other people were significantly injured.
>
> Therefore, the bottom line is [that,] while I appreciate your acceptance of responsibility, I also appreciate the fact that I have to remind you the Commonwealth de-mandatorized these cases. If you had gone to trial and got convicted of two third-degree murders, the sentence would've been automatic life. … [I]n this case, upon more reflection, and reviewing the notes of testimony

and all my notes and all … the records again, this [c]ourt is convinced that 40 to 80 years is an appropriate sentence. Therefore, your motion to reconsider is denied.

*Id.* at 13-14.

Appellant filed a timely notice of appeal in each case.[2] He and the court thereafter complied with Pa.R.A.P. 1925(b). Herein, Appellant states one issue for our review: "Did the trial court abuse its discretion in imposing an aggregate sentence of … 40 to … 80 years following an open guilty plea to three cases?" Appellant's Brief at 5 (internal parenthesis omitted).

Appellant's issue implicates the discretionary aspects of his sentence.

Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. ***Commonwealth v. Sierra***, 752 A.2d 910, 912 (Pa. Super. 2000). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

We conduct a four[-]part analysis to determine: (1) whether [the] appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. 720; (3) whether [the] appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).

***Commonwealth v. Evans***, 901 A.2d 528, 533 (Pa. Super. 2006) [(cleaned up)]…. Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed. ***Commonwealth v. Mann***, 820 A.2d 788, 794 (Pa. Super. 2003)….

_____

[2] This Court *sua sponte* consolidated Appellant's appeals by order entered September 3, 2024.

> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. ***Commonwealth v. Paul***, 925 A.2d 825, 828 (Pa. Super. 2007). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Sierra***, ***supra*** at 912–13.

***Commonwealth v. Griffin***, 65 A.3d 932, 935 (Pa. Super. 2013) (quoting

***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010)).

Here, Appellant filed a timely notice of appeal and preserved his claim in a post-sentence motion. He has also set forth a Rule 2119(f) statement in his appellate brief. ***See*** Appellant's Brief at 4. Therein, he contends that

> the trial court failed to properly consider [the] sentencing factors enumerated in 42 Pa.C.S. § 9721, by focusing solely on the nature of the offense and impact on the victims, while not placing substantial weight on the mitigation [factors] presented by [Appellant] at the sentencing hearing, including but not limited to his statement and remorse, his background and upbringing, his young age and acceptance of responsibility for all cases. The court basically ignored the rehabilitative needs of Appellant, concentrating solely on the gravity of the offenses and imposing consecutive sentences with[out] sufficient justification.

***Id.***

We deem Appellant's claim as constituting a substantial question for our review. ***See Commonwealth v. Reid***, 323 A.3d 26, 30 (Pa. Super. 2024) (reiterating that "[a]n averment that the court sentenced based solely on the seriousness of the offense and failed to consider all relevant factors has been found to raise a substantial question") (cleaned up); ***Commonwealth v. Swope***, 123 A.3d 333, 340 (Pa. Super. 2015) (concluding that a "challenge to the imposition of [the appellant's] consecutive sentences as unduly

- 9 -

excessive, together with his claim that the court failed to consider his rehabilitative needs and mitigating factors upon fashioning its sentence, presents a substantial question"); ***Commonwealth v. Raven***, 97 A.3d 1244, 1253 (Pa. Super. 2014) (holding that "an excessive sentence claim — in conjunction with an assertion that the court failed to consider mitigating factors — raises a substantial question").

In reviewing the merits of Appellant's sentencing challenge, we are mindful that,

> [s]entencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Shugars***, 895 A.2d 1270, 1275 (Pa. Super. 2006).

Instantly, Appellant contends that his sentence is excessive because the court focused only on the seriousness of his offenses and the impact on the victims, while disregarding his young age at the time of his crimes, the nature and circumstances his life, and his rehabilitative needs. ***See*** Appellant's Brief at 9.

Based on the record before us, we disagree. Initially, we recognize that, "[i]n fashioning its sentence, a trial court must consider 'the protection of the public, the gravity of the offense [on] the victim and [] community, and the

rehabilitative needs of the defendant.'" **Reid**, 323 A.3d at 31 (quoting 42 Pa.C.S. § 9721(b)). Additionally,

> [w]here the trial court had the benefit of reviewing a presentence report, we must
>
>> presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself. In order to dispel any lingering doubt as to our intention of engaging in an effort of legal purification, we state clearly that sentencers are under no compulsion to employ checklists or any extended or systematic definitions of their punishment procedure. Having been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed. This is particularly true, we repeat, in those circumstances where it can be demonstrated that the judge had any degree of awareness of the sentencing considerations, and there we will presume also that the weighing process took place in a meaningful fashion. It would be foolish, indeed, to take the position that if a court is in possession of the facts, it will fail to apply them to the case at hand.

**Id.** (quoting **Commonwealth v. Hallock**, 603 A.2d 612, 616 (Pa. Super. 1992) (citation omitted)). Moreover, "where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code." **Moury**, 992 A.2d at 171 (citation omitted)

Here, the trial court had the benefit of a presentence report (as well as a mental health report), and it ultimately imposed standard-range sentences. **See** TCO at 1 (stating that "[s]entencing was deferred [to obtain] pre-sentence investigation and mental health reports"); **id.** at 7 ("This [c]ourt imposed standard range sentences on all counts."). Thus, we may presume

the court was aware of, and weighed, the mitigating circumstances cited by Appellant, and that it imposed an appropriate sentence.

However, we need not simply **presume** that the court considered the factors pointed to by Appellant — namely, his young age at the time of his crimes, the nature and circumstances of his life, and his rehabilitative needs — because the court's statements during the sentencing hearing demonstrate this fact. As discussed *supra*, at the sentencing hearing, the court noted Appellant's young age, but found it troubling that he had amassed such a lengthy criminal history, including prior firearm offenses, at just 16 years old. The court also acknowledged Appellant's difficult childhood, his mental health and substance abuse issues, and his expressions of remorse. Nevertheless, the court stressed that Appellant had wasted prior opportunities to rehabilitate himself when he chose to abscond from juvenile delinquency placements. This record demonstrates that the court took into account the mitigating factors cited by Appellant.

However, the court concluded that a lengthy term of incarceration was warranted due to the seriousness of Appellant's offenses and the danger he poses to the public. The court explained its sentencing decision in its opinion, as follows:

> In fashioning its sentence, this court considered all the relevant factors, including the sentencing guidelines, the protection of the public, the gravity of the offenses as they relate to the impact on the lives of the victims, their families, and the community, as well as [Appellant's] prior criminal record, his age, family support, school record, mental health history, drug abuse, the fact that he accepted responsibility by pleading guilty, and his potential for

- 12 -

rehabilitation. ***Commonwealth v. Edwards***, 194 A.3d 625, 637 (Pa. Super. 2018) (citing ***Commonwealth v. Griffin***, 804 A.2d 1 (Pa. Super. 2002)); N.T. [Sentencing] at 4-16, 25-26, 36-39.

This court heard from … [Mr.] Montanez-Rivera's mother and brother about the pain and devastation that this incident caused their family, including the tragic loss of a father to the decedent's children. This court acknowledged … [Mr.] Batte's father, who chose not to share a victim impact statement on the record, noting, "[I]t's too late for me to say something." The surviving aggravated assault victims of each incident did not wish to be present for sentencing. N.T. [Sentencing] at 17-23; N.T. [Hearing] at 10-14.

After weighing all the relevant factors, this court arrived at a well-reasoned and just sentence, given the brutal, repeated, and outrageous nature of these crimes. In one instance, [Appellant], with three accomplices, shot and killed a young man at close range in his car after work, firing forty-eight times into the back seat of the vehicle, striking the decedent multiple times in the neck and face, and striking two other individuals in the back, legs, and arms. Only a few days later, in an unrelated event, [Appellant], along with two accomplices, fired twenty-five times into a crowd of innocent people enjoying a barbecue…, killing one and seriously injuring three others, all while four young children were in the home and could have been struck. The surviving victims, who were shot in the nose, neck, stomach, arms, and legs, spent extensive time recovering in the hospital, ranging from just under one week to two months. That same day, [Appellant] stole a car at gunpoint with a firearm whose serial number was obliterated, putting the driver in fear of losing his life. [Appellant's] actions generated fear and devastation among so many people, including not only his victims, but also their families and communities.

A shorter sentence would allow [Appellant] to return to his terrorizing behaviors before being rehabilitated, thereby presenting an ongoing danger to the public. With a prior record consisting of multiple firearms offenses and thefts, a frightening propensity towards life-threatening violence, and a failure to learn from his mistakes, the sentence this court imposed on [Appellant] is markedly appropriate. Any less of a sentence would denigrate the seriousness of the offenses, the horrific nature of the murders, the numerous people affected by these crimes, and the danger that [Appellant] poses to the public. N.T. [Sentencing] at 37-39.

TCO at 9-10 (unnecessary capitalization omitted).

In light of the record before us, and the trial court's explanation for the sentence it imposed, it is clear that the court considered all the requisite statutory factors, as well as the mitigating circumstances in this case. Ultimately, the court determined that the egregious crimes committed by Appellant, the significant and lasting impact on the victims, and the danger he poses to society warranted a lengthy term of incarceration. We discern no abuse of discretion in that decision.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/6/2025